IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | NO. 09-00496-01, -03, -04, |
| | : | -05, -06, -07, -08, -10, |
| v. | : | -11, -14, -15 |
| | : | |
| JOSEPH LIGAMBI, | : | |
| ANTHONY STAINO, JR., | : | |
| JOSEPH MASSIMINO, | : | |
| GEORGE BORGESI, | : | |
| MARTIN ANGELINA, | : | |
| GAETON LUCIBELLO, | : | |
| DAMION CANALICHIO, | : | |
| LOUIS BARRETTA, | : | |
| GARY BATTAGLINI, | : | |
| JOSEPH LICATA, and | : | |
| LOUIS FAZZINI, | : | |
| | : | |
| Defendants. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                June 21, 2012


I.   **INTRODUCTION**

        Before the Court are Defendants Borgesi, Canalichio,
Angelina, and Lucibello's Motions for Bills of Particulars. For
the following reasons, the Court finds that bills of particulars
are not warranted with respect to Defendants Borgesi,
Canalichio, Angelina, and Lucibello because the indictment and

discovery materials sufficiently enable Defendants to avoid surprise at, and prepare for, trial as well as to protect themselves against a second prosecution for the same conduct.

## II.  BACKGROUND

Defendants Borgesi, Canalichio, Angelina, and Lucibello are four of fourteen defendants charged in a fifty-two count second superseding indictment. The case emerged from a criminal investigation spanning ten years and has been twice designated a complex case due to the number of defendants and the nature and quantity of evidence, which includes over 14,000 intercepted wire and oral communications. See ECF Nos. 166, 520. Among other counts, Defendants are charged with conspiring to conduct and participate in the conduct of the affairs of the criminal enterprise of the Philadelphia La Cosa Nostra ("LCN") Family through a pattern of racketeering activity and through the collection of unlawful debts.

On March 7, 2012, Defendant Canalichio filed a motion for a bill of particulars and the Government responded on April 5, 2012. ECF Nos. 355, 377. On March 14, 2012, Defendant Lucibello filed a motion for a bill of particulars and the Government filed its response on April 5, 2012. ECF Nos. 358, 376. On April 9, 2012, Defendant Angelina filed a motion for a

bill of particulars to which the Government responded on May 16, 2012. ECF Nos. 384, 525. Lastly, on April 16, 2012, Defendant Borgesi filed a motion for a bill of particulars to which the Government responded on May 15, 2012. ECF Nos. 396, 510, 512. All of these motions are ripe for disposition and the Court will deal with each in turn following a discussion of the applicable legal principles.

## III. LEGAL STANDARDS

The Court may direct the government to file a bill of particulars, or a defendant may move for a bill of particulars. See Fed. R. Crim. P. 7(f). Whether to grant a bill of particulars lies in the discretion of the trial court, and denial is reviewed for abuse of discretion. United States v. Armocida, 515 F.2d 49, 54 (3d Cir. 1975). "The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." United States v. Addonizio, 451 F.2d 49, 63-64 (3d Cir. 1971).

A bill of particulars is "more akin to the functions of an indictment than to discovery," United States v. Smith, 776

F.2d 1104, 1111 (3d Cir. 1985), in that its function is to supplement the pleading requirements applicable to the indictment, "when the indictment itself is too vague and indefinite for such purposes." Addonizio, 451 F.2d at 64; see also United States v. Moyer, 674 F.3d 192, 203 (3d Cir. 2012) ("For an indictment to be sufficient, it must contain all the elements of a crime and adequately apprise the defendant of what he must be prepared to meet.").

The 1966 amendment to Rule 7(f), eliminating the requirement that cause be shown before a bill of particulars may be ordered, was "designed to encourage a more liberal attitude by the courts towards bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." Fed. R. Crim. P. 7(f) advisory committee's note. Nonetheless, a bill of particulars is not a vehicle for the defendant to obtain wholesale discovery of the government's evidence or theories. See e.g., United States v. Eufrasio, 935 F.2d 553, 575 (3d Cir. 1991); Smith, 776 F.2d at 1111; Addonizio, 451 F.2d at 64. "Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." Smith, 776 F.2d at 1111 (citing United States v. Manetti, 323 F. Supp. 683, 696 (D. Del. 1971)).

4

As with an indictment, a bill of particulars serves to set the parameters of the government's case, such that "there can be no variance between the notice given in a bill of particulars and the evidence at trial." Smith, 776 F.2d at 1111 (citing United States v. Neff, 212 F.2d 297, 309 (3d Cir. 1954)); United States v. Murray, 297 F.2d 812 (2d Cir. 1962)). Due to this consequence:

> [T]rial judges must be allowed to exercise broad discretion in order to strike a prudent balance between the defendant's legitimate interest in securing information concerning the government's case and numerous countervailing considerations ranging from the personal security of witnesses to the unfairness that can result from forcing the government to commit itself to a specific version of the facts before it is in a position to do so.

United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989).

An indictment is sufficient and obviates the need for a bill of particulars when "it substantially follows the language of the criminal statute, provided that its generality does not prejudice a defendant in preparing his defense nor endanger his constitutional guarantee against double jeopardy." Eufrasio, 935 F.2d at 575. By the same token, when the government supplements a detailed charging document with substantial discovery, defendant's claim for a bill of particulars is further weakened. United States v. Urban, 404 F.3d 754, 772 (3d Cir. 2005).

The Court turns now to apply these standards to Defendants Canalichio, Lucibello, Angelina, and Borgesi's motions for a bill of particulars.

## IV.  DEFENDANT CANALICHIO'S MOTION FOR A BILL OF PARTICULARS

Defendant Canalichio requests the Court direct the government to provide a bill of particulars that specifies the following information: (a) the names and identities of all co-conspirators, whether known or unknown; (b) the first and last events that the government will rely upon as proof of the beginning and end of the conspiracy; (c) the dates, times, and places, that establish when Defendant Canalichio became a member of the conspiracy and withdrew from the conspiracy; (d) all overt acts allegedly committed by Canalichio in furtherance of the alleged conspiracy, which the government intends to prove at trial; (e) whether any defendant or co-conspirator, named or unnamed, was a government agent during the alleged conspiracy; and (f) the names of any co-conspirator and others who conversed with Canalichio about the charged crimes during the pendency of the alleged conspiracy. Def.'s Mot. 2-3, ECF No. 355. The Government responds that Defendant's motion should be denied because it only seeks evidentiary details of the racketeering conspiracy charged in Count One. Gov't's Resp. 11, ECF No. 377.

All of Defendant Canalichio's requests concern Count
One of the Superseding Indictment,[1] which avers that Defendant
Canalichio and ten other defendants conspired to conduct and
participate in the affairs of a racketeering enterprise known as
the Philadelphia LCN Family through a pattern of racketeering
activity and the collection of unlawful debts. The conspiracy
count provides Defendant with adequate notice of the allegations
against him, by tracking the language of the federal statute,
providing a detailed description of the enterprise and
identifying the specific crimes that the members of the
conspiracy agreed would be undertaken in furtherance of the
illegal purposes of the enterprise. See Eufrasio, 935 F.2d at

---

[1] A Second Superseding Indictment dated April 18, 2012, was
unsealed on April 26, 2012. ECF No. 407. Even though Defendant
Canalichio, Lucibello, Angelina, and Borgesi's motions were
written before the Second Superseding Indictment, this
memorandum will evaluate each Defendant's request for a bill of
particulars while taking into account the additional factual
details provided in the Second Superseding Indictment. The
Second Superseding Indictment added two Defendants, Joseph
Licata and Louis Fazzini, to the racketeering conspiracy charged
in Count One. Gov't's Second Mot. for Designation as Complex
Case 2, ECF No. 489. It also extended the date of the
racketeering conspiracy to April 2012, and included additional
averments in Count One regarding the structure, purposes, and
manner and means of the enterprise as well as the extortion
activities of the racketeering enterprise. See Second
Superseding Indictment ¶¶ 2-5, 7, 24, 26, 29-30. The Second
Superseding Indictment also added two new charges against
Defendant Ligambi that were included as part of the racketeering
conspiracy: conspiracy to commit theft and theft from an
employee benefit plan. Id. ¶¶ 33-34.

575. The indictment further provides Defendant Canalichio with adequate notice of the time period, the purposes of the enterprise, the role Defendant had, and specific factual information regarding the manner and means of the scheme. <u>See</u> Second Superseding Indictment 1-31;[2] <u>see</u> <u>Wong Tai v. United</u>

---

[2] Count One specifies the roles of the defendants in the racketeering enterprise, and identifies Defendant Canalichio's role as follows:

> At times relevant to this indictment, other "made" members included DAMION CANALICHIO, a/k/a "Dame." . . . Defendant CANALICHIO served the Enterprise in a variety of capacities, including assisting in the operations of the Enterprise's illegal sports bookmaking businesses and loansharking activities.

Second Superseding Indictment ¶ 14.

> With respect to Defendant Canalichio's participation in illegal gambling, Count One avers the following facts:

> 23. Defendant LIGAMBI along with defendants STAINO, MASSIMINO, ANGELINA, LUCIBELLO, CANALICHIO, BARRETTA, BATTAGLINI, ESPOSITO, LICATA, FAZZINI, and their associates defendant VERRECCHIA and others, operated numerous illegal gambling businesses in the Eastern District of Pennsylvania and elsewhere for the benefit of the Enterprise. Those businesses include those described in Counts 43 through 49 of this superseding indictment, which are incorporated by reference and summarized below:

> . . . .

> > D. "First Ward Republican Club": Defendants ANGELINA and CANALICHIO, ERIC ESPOSITO, their criminal partner known to the grand jury as Associate #2, and other co-conspirators, conducted, financed, managed, supervised,

directed, and owned all or part of illegal gambling businesses, namely illegal electronic gambling device business [sic] involving the illegal use of video poker machines. These businesses were conducted at the First Ward Republican Club, a private club where Enterprise members met regularly, which was located at 2300 S. Woodstock Street, Philadelphia, Pennsylvania.

E. Sports Bookmaking: Defendants CANALICHIO, STAINO, BARRETTA, BATTAGLINI, FAZZINI, and other co-conspirators directed and otherwise managed the day-to-day operation of illegal sports bookmaking businesses on behalf of defendant LIGAMBI, BORGESI, LICATA, and other members of the Enterprise, known and unknown to the grand jury. As part of the illegal sports bookmaking activity, the defendants extended credit and collected gambling and usurious debts. Defendants LIGAMBI, STAINO, BARRETTA, and BATTAGLINI regularly collected debts, and caused the collection of debts, owed for sports bets to the Enterprise's illegal gambling businesses. After making these collections, defendant STAINO would meet with defendant LIGAMBI at LIGAMBI's residence to deliver proceeds. While incarcerated, BORGESI received proceeds from the sports bookmaking operation that was operated and managed by Louis Monacello on BORGESI's behalf. As alleged in more detail below, the defendants relied upon the Philadelphia LCN Family's reputation for violence to enforce their illegal debts in making these collections.

Id. ¶ 23.

With respect to CANALICHIO's participation in loansharking and extortion on behalf of the racketeering enterprise, Count One avers the following facts:

24. Defendants LIGAMBI, STAINO, MASSIMINO, BORGESI, CANALICHIO, ANGELINA, BARRETTA, and BATTAGLINI, and their coconspirators, approved, supervised, and otherwise participated in extortionate extensions of credit, collections of debts using extortionate means,

and other illegal demands, to generate income for the
Enterprise and its members.

25. Defendants LIGAMBI, STAINO, MASSIMINO, BORGESI,
CANALICHIO, BARRETTA and BATTAGLINI, and their co-
conspirators also extended loans charging usurious
rates of interest as part of the illegal terms of the
loan, and used extortionate means to collect payments
related to these loans.

26. In connection with making and collecting
extensions of credit and usurious loans, defendants
LIGAMBI, STAINO, MASSIMINO, BORGESI, CANALICHIO,
BARRETTA, and BATTAGLINI cultivated and exploited the
violent reputation of the Enterprise to discourage
resistance to their extortionate demands and to
threaten borrowers that if they did not promptly repay
the loans, with interest, they would suffer physical
and economic harm. The defendants also used express
and implied threats of physical violence and economic
harm to instill fear in their victims and to preserve
and sustain the Enterprise as exemplified below:

> A. In or about April 2002, defendants CANALICHIO
> and BARRETTA threatened Victim A in connection
> with making an extortionate collection of a
> usurious loan debt when the defendants told
> Victim A that they were attempting to collect
> "Uncle Joe's money" (referring to defendant
> LIGAMBI, the Enterprise boss), from Victim A. In
> a subsequent conversation, defendant BARRETTA
> told Victim A that defendant CANALICHIO was
> "capable of cracking" Victim A if necessary to
> collect that debt. On another occasion, in or
> about May 2002, defendants BARRETTA and
> CANALICHIO described to Victim A how they had
> repeatedly assaulted another debtor, including an
> instance where defendant CANALICHIO caught the
> debtor by surprise and beat him with a bat.

Id. ¶¶ 24—26(A).

conspiracy is the gist of the crime--it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy, or to state such object with the detail which would be required in an indictment for committing the substantive offense."). Based on the indictment alone a bill of particulars in this case does not appear warranted because the indictment charged Defendant Canalichio with definiteness and reasonable particularity as to the period of the conspiracy, and with conspiring with Defendants Ligambi, Massimino, Borgesi, Angelina, Staino, Lucibello, Barretta, Battaglini, Licata, and Fazzini, and other known[3] and unknown conspirators to violate 18 U.S.C. § 1962(c).[4]

Moreover, the Government represents that it has provided voluminous discovery in this case, including: thousands of audio recordings; consensual recordings; Title III documents; progress reports concerning pertinent intercepted communications; surveillance reports; search warrant

---

[3] The Government indicates that Louis Monacello and Peter Caprio were also known conspirators that are charged elsewhere. Second Superseding Indictment ¶ 16.

[4] Defendant's argument for a bill of particulars as to any alleged overt acts Defendant committed in furtherance of the alleged conspiracy is particularly untenable because a RICO conspiracy does not require allegations of overt acts. See Salinas v. United States, 522 U.S. 52, 63 (1997).

applications and affidavits; physical evidence; <u>Brady</u> and <u>Giglio</u>
material, including guilty plea agreements, immunity letters,
criminal histories, payments and other benefits; business
records and tax returns; copies of Defendants' prison mail,
visitation records, telephone logs, and monitored telephone
communications; and other materials. Gov't's Resp. 5-6;
Discovery Production Letters & Inventory, Gov't's Resp. to
Defendants' Motion for a Bill of Particulars Ex. A, ECF No. 379.
With respect to Defendant Canalichio, the Government's discovery
materials include copies of three affidavits submitted in
support of the Government's application for an order to monitor
wire communications over Defendant Canalichio's cellular
telephone, audio copies of intercepted communications, and
progress reports filed with the Court which summarized his
criminal conversations. Gov't's Resp. 13. The Government also
states that any information the Defendant does not already have
will be provided through the production of Jencks materials.[5]
Gov't's Resp. 13.

     Defendant nonetheless asserts that he is entitled to
these particulars to adequately prepare a defense to the charges

---

[5] The Government states that it has agreed to produce witness
statements and other Jencks Act materials by July 6, 2012, well
in advance of the commencement of trial per the Court's Third
Scheduling Order. ECF No. 521.

against him. Def.'s Mot. 8. "'[C]ourts have been highly reluctant to require a bill of particulars when defendants have asked for specific identities of coconspirators or others allegedly involved. So long . . . [as] an indictment and discovery sufficiently enables defendants to avoid surprise and prepare for trial, a bill of particulars is not warranted.'" United States v. Sampson, No. 11-155, 2012 WL 214707, at *2 (M.D. Pa. Jan. 24, 2012) (quoting United States v. Coffey, 361 F. Supp. 2d 102, 122 (E.D.N.Y. 2005)); see also United States v. Crayton, 357 F.3d 560, 568 (6th Cir. 2004) ("[T]he Government is not required to furnish the name of all other co-conspirators in a bill of particulars."). Here, the Government has provided a substantial amount of discovery, which the Defendant has had the time to review and digest. Urban, 404 F.3d at 772 (concluding that access to full discovery further weakens, if not obviates, the need for a bill of particulars). The detailed indictment coupled with the discovery provided to Defendant is sufficient to inform him of the nature of the charges against him and to permit him to conduct "his own investigation." Smith, 776 F.2d at 1111. Furthermore, the Government represents that while it is not obligated to reveal the identity of every possible co-conspirator, an additional associate will be identified in the

Jencks materials along with the identities of certain victims. Gov't's Resp. 13.

In light of the foregoing, the Court finds that a bill of particulars is not warranted because the indictment and the discovery materials sufficiently enable Defendant to determine the identities of, and other relevant information concerning, various co-conspirators and the nature of the charges against him, thereby enabling Defendant to avoid surprise at, and prepare for, trial as well as to protect himself against a second prosecution for the same conduct.

## V.    DEFENDANT LUCIBELLO'S MOTION FOR A BILL OF PARTICULARS

Defendant Lucibello requests a bill of particulars from the Government to inform him of: (a) the identity of Bookmaker A; (b) additional specificity of the time period of the alleged extortionate activities; and (c) a plain, concise, and definite written statement of the essential facts constituting the offense charged. Def.'s Mot. 2, ECF No 358. The Government contends that the Defendant's motion is a request for a more detailed evidentiary statement of the Government's case against Defendant Lucibello. Gov't's Resp. 11, ECF No. 376.

Defendant Lucibello's request also concerns Count One of the Superseding Indictment. The conspiracy count provides

Defendant with adequate notice of the allegations against him, as it tracks the language of the federal statute by providing a detailed description of the enterprise and identifying the specific crimes that the members of the conspiracy agreed would be undertaken in furtherance of the illegal purposes of the enterprise. See Eufrasio, 935 F.2d at 575. The indictment further provides Defendant Lucibello with adequate notice of the time period, the purposes of the enterprise, the role Defendant had,[6] and specific factual information regarding the manner and

---

[6] Count One specifies the roles of the defendants in the racketeering enterprise, and specifies Defendant Lucibello's role as follows:

> At times relevant to this indictment, other "made" members included . . . GAETON LUCIBELLO, a/k/a "the Big Guy," a/k/a "Gate," as well as others known and unknown to the grand jury. . . . Defendant LUCIBELLO was a close associate of defendant MASSIMINO and assisted defendant MASSIMINO in operating the Enterprise's affairs from prison, including facilitating the collection of unlawful debts and proceeds of extortion on behalf of defendant MASSIMINO. In addition, defendant LUCIBELLO assisted in controlling the Enterprise's illegal gambling rackets and personally participated in two illegal gambling businesses.

Second Superseding Indictment ¶ 14.

> With respect to Defendant Lucibello's participation in extortion on behalf of the racketeering enterprise, Count One avers the following facts:

> 29. Defendants LIGAMBI, STAINO, MASSIMINO, LUCIBELLO, BORGESI, and their co-conspirators, approved, supervised, and otherwise participated in extortion

15

means of the scheme. <u>See</u> Second Superseding Indictment 1-31; <u>see</u>
<u>Wong Tai</u>, 273 U.S. at 81. Based on the indictment alone a bill
of particulars in this case does not appear warranted because
the indictment charged Defendant Lucibello with definiteness and
reasonable particularity as to the period of the racketeering
conspiracy, and with conspiring with Defendants Ligambi,
Massimino, Borgesi, Angelina, Staino, Lucibello, Barretta,
Battaglini, Licata, and Fazzini, and other known and unknown
conspirators to violate 18 U.S.C. § 1962(c) (Count One).

Moreover, as previously discussed the Government
represents that it has provided voluminous discovery in this
case, <u>see</u> <u>supra</u> pp. 11-12. Gov't's Resp. 3-4, 10; Discovery
Production Letters & Inventory, Gov't's Resp. Ex. A. The

---

activities to generate income for the Enterprise and
its members. For example, from 2000 to 2007, defendant
LIGAMBI selected various bookmakers who were
conducting criminal activity in Philadelphia and
southern New Jersey, and ordered Louis Monacello to
extort these bookmakers by demanding and collecting
from them yearly "street tax," "tribute payments," or
"Christmas payments" to avoid personal harm and the
disruption of their illegal bookmaking businesses.

30. From approximately 2002 to 2006, defendant
MASSIMINO, with the assistance of defendant LUCIBELLO,
extorted Bookmaker A by demanding that Bookmaker A
provide yearly tribute payments to the Philadelphia
LCN Family, through defendants MASSIMINO and
LUCIBELLO, to avoid personal harm and the disruption
of Bookmaker A's illegal bookmaking business.

<u>Id.</u> ¶¶ 28-29.

Government also states that any information the Defendant does not already have, such as the identity and testimony of Bookmaker A, will be provided through the production of Jencks materials. Gov't's Resp. 10. Defendant's assertion that after reviewing the Government's discovery he is unable to find any evidence that he participated in any of the activities alleged in Count One is an argument to present to the Court at the close of the Government's case or to the jury, not a ground for granting a motion for a bill of particulars. Def.'s Mot. 2; see United States v. Moses, 515 F. Supp. 474, 477 (E.D. Pa. 1981).

In conclusion, the Court holds that a bill of particulars is not warranted because the indictment and the discovery materials sufficiently enable Defendant to determine "the scope, duration, and extent of the criminal activities propagated by the criminal enterprise" and the nature of the statutory crimes against him. United States v. Traitz, No. 99-003, 1999 WL 551924, at *2 (E.D. Pa. July 15, 1999).

## VI. DEFENDANT ANGELINA'S MOTION FOR A BILL OF PARTICULARS

Defendant Angelina moves for a bill of particulars with respect to Count One on the ground that the Government "does not substantiate the claim that the Defendant was a high-ranking member" of the racketeering enterprise, and "offers no

17

support for any connection the Defendant may have had" with the racketeering enterprise. Def.'s Mot. 3, ECF No. 384. With respect to participating in an illegal gambling business, in violation of 18 U.S.C. § 1955 (Count 47), Defendant complains that the averments of the indictment provide "no specific actions" committed by Defendant. Id. Defendant requests that the Government state in a bill of particulars the specific acts Defendant committed in furtherance of the gambling offense in Count 47 and provide "articulable facts" showing his connection to the racketeering enterprise in Count One. Id. at 4. The Government responds that Defendant's motion should be denied because it only seeks evidentiary details of the racketeering conspiracy charged in Count One and the gambling offense charged in Count 47. Gov't's Resp. 12, ECF No. 525.

Defendant's first contention that the averments of the indictment do not connect him to the enterprise is refuted by the plain language of the pleading. The conspiracy count provides Defendant with adequate notice of the allegations against him, and it tracks the language of the federal statute by providing a detailed description of the enterprise and identifying the specific crimes that the members of the conspiracy agreed would be undertaken in furtherance of the illegal purposes of the enterprise. See Eufrasio, 935 F.2d at

575; Second Superseding Indictment ¶¶ 1-15. The indictment
further provides Defendant Angelina with adequate notice of the
time period, the purposes of the enterprise, the role Defendant
had,[7] and specific factual information regarding the manner and
means of the scheme. See Second Superseding Indictment ¶¶ 6-7.
In particular, paragraph 7H describes how members of the
enterprise generated money from their various criminal
activities for the enterprise and its members and associates,
while paragraph 7I describes how the co-conspirators shared
their criminal proceeds with the hierarchy of the enterprise.
Id. ¶ 7H-I.

Count One further sets forth Defendant Angelina's role
in the illegal sports bookmaking business and loansharking
activities of the Philadelphia LCN Family. Id. ¶¶ 23, 23D, 27-
28. Paragraph 23D states:

> Defendants ANGELINA and CANALICHIO, ESPOSITO, their
> criminal partner known to the grand jury as Associate
> #2, and other co-conspirators, conducted, financed,

---

[7] Count One describes Defendant Angelina's role in the
racketeering enterprise as follows:

> Defendant MARTIN ANGELINA, a/k/a "Marty," was a high-
> ranking "made" member of the Enterprise. Among other
> responsibilities, defendant ANGELINA participated in
> operating an illegal gambling business and in
> attempting to collect extensions of credit using
> extortionate means.

Second Superseding Indictment ¶ 11.

> managed, supervised, directed, and owned all or part
> of illegal gambling businesses, namely illegal
> electronic gambling device business involving the
> illegal use of video poker machines. These businesses
> were conducted at the First Ward Republican Club, a
> private club where Enterprise members met regularly.

Id. at 23D. The averments of Count 47 track the averments of

Count One with respect to the First Ward Republican Club

gambling operation as well as the elements of 18 U.S.C. § 1955.

Id. at 59. It provides additional details regarding Defendant

Angelina's participation in the gambling business, including the

approximate dates of the activity, the other participants, and

the specific law of the Commonwealth of Pennsylvania that

Defendant violated, that is, 18 Pa. Const. Stat. Ann. § 5513.

Id.

Paragraphs 24, 27, and 28 of Count One supply further

detail with respect to Defendant Angelina's role in the

loansharking activities of the Philadelphia LCN Family,

alleging, for example, that: "Defendants LIGAMBI, STAINO,

BORGESI, and ANGELINA, along with Louis Monacello, extended

usurious loans and extortionate extensions of credit to and/or

engaged in debt collections using extortionate means from

Associate #1 by using the Enterprise's reputation for violence."

Id. ¶ 28.

Moreover, as previously discussed, the Government

represents that it has provided voluminous discovery in this

case, see supra pp. 11-12. Gov't's Resp. 6-7, 14; Discovery

Production Letters & Inventory, Gov't's Resp. to Defendants'

Motion for a Bill of Particulars Ex. A, ECF No. 379. The

Government also states that any information the Defendant does

not already have will be provided through the production of

Jencks materials. Urban, 404 F.3d at 772 (concluding that access

to full discovery further weakens, if not obviates, the need for

a bill of particulars).

    Against this background, the Court concludes that a

bill of particulars is not warranted because the indictment and

the discovery materials sufficiently enable Defendant to

determine "the scope, duration, and extent of the criminal

activities propagated by the criminal enterprise" and the nature

of the statutory crimes against him. Traitz, 1999 WL 551924, at

*2.


**VII. DEFENDANT BORGESI'S MOTION FOR A BILL OF PARTICULARS**

    Defendant Borgesi requests the following information

to be stated in a bill of particulars: (a) Defendant Borgesi's

connection to the racketeering conspiracy; (b) the specific acts

he committed in furtherance of the charged racketeering

conspiracy and other substantive offenses; (c) the specific

dates he committed those acts; and (d) the identities of all

persons who acted with or on behalf of Defendant Borgesi. Def.'s
Mot. 2-5, ECF No. 396. The Government responds that the motion
is Defendant's attempt to receive an evidentiary statement of
the government's trial proof or its theory of the case. Gov't's
Resp. 2, ECF No. 510.

Defendant's first contention that the averments of the
indictment do not connect him to the enterprise is refuted by
the averments of the pleading. The conspiracy count provides
Defendant with adequate notice of the allegations against him,
and it tracks the language of the federal statute by providing a
detailed description of the enterprise and identifying the
specific crimes that the members of the conspiracy agreed would
be undertaken in furtherance of the illegal purposes of the
enterprise. See Eufrasio, 935 F.2d at 575; Second Superseding
Indictment ¶¶ 1-15. The indictment further provides Defendant
Borgesi with adequate notice of the time period, the purposes of
the enterprise, the role Defendant had,[8] and specific factual

---

[8] Count One describes Defendant Borgesi's role in the
racketeering enterprise as follows:

> Defendant GEORGE BORGESI, the nephew of LIGAMBI, was a
> "made" member who served in various roles including,
> the "consigliere" of the Enterprise. Although he was
> incarcerated throughout much of the period of the
> superseding indictment, defendant BORGESI continued to
> conduct and participate in the affairs of the
> Enterprise from his places of incarceration through
> others such as defendant LIGAMBI, Louis Monacello,

information regarding the manner and means of the scheme. <u>See</u>
Second Superseding Indictment ¶¶ 6-7.

Count One further sets forth Defendant Borgesi's role
in the illegal sports bookmaking business and loansharking
activities of the Philadelphia LCN Family. <u>Id.</u> ¶¶ 23, 23E, 24-
28.  Paragraph 23E states: "While incarcerated, BORGESI received
proceeds from the sports bookmaking operation that was operated
and maintained by Monacello on BORGESI's behalf."[9] The averments

---

Associate #1, and others, who engaged in and
facilitated loansharking and gambling activities under
the control of defendant BORGESI.

Second Superseding Indictment ¶ 10.

[9] The Second Superseding Indictment avers that even while
incarcerated members were expected to participate in the
criminal activities of the racketeering enterprise:

In light of the criminal purposes of the Enterprise,
it was expected and accepted that "made" members would
experience periodic terms of incarceration. Service of
prison sentences without cooperating with law
enforcement authorities was honored within the
Enterprise and affirmatively encouraged. Incarceration
did not necessarily suspend the "made" members'
criminal careers. In fact, incarcerated "made" members
often continued to conduct and participate in the
affairs of the Enterprise from prison to maintain the
continuous flow of income from their illegal
businesses. When a "made" member was incarcerated, un-
incarcerated members of the Enterprise were expected
to provide financial support to the incarcerated
"made" member and his family by maintaining the flow
of income from his illegal activities, making
donations to him and his family, or doing both. This
was done to prevent incarcerated members from breaking

23

of Counts 26-38 provide additional facts regarding Defendant

Borgesi's participation in the loansharking activities,

including the approximate dates of the activities, the victims

of the extortionate debt transactions, the other participants,

and the manner and means of carrying out the schemes. See Second

Superseding Indictment 37-41.[10] As for the time periods, the

indictment clearly defines the dates of the racketeering

conspiracy as "from in or about 1999 to in or about April 2012."

Id. ¶ 16. Moreover, each of the substantive offenses charged in

Counts 26-38 specify the approximate, if not specific dates, of

each offense. Finally, each count of the Second Superseding

Indictment in which Defendant Borgesi is charged identifies who

participated with Borgesi in the criminal activities charged:

Monacello, Associate #1, and other named defendants. Based on

the indictment alone a bill of particulars in this case is not

---

        ranks, cooperating with authorities, and testifying
        about the criminal affairs of the Enterprise.

Second Superseding Indictment ¶ 7E.

[10] With respect to Counts 28-37, the Government included a chart
specifying the dates and amounts that constitute transactions of
collection and attempted collection of credit by extortionate
means. Second Superseding Indictment 40. These factual
allegations are sufficiently detailed and precise to allow
Defendant to conduct his own investigation and to adequately
prepare his defense, avoid surprise at trial, and protect
himself against a second prosecution for the same conduct.
Addonizio, 451 F.2d at 63-64.

warranted because the indictment charged Defendant Borgesi with definiteness and reasonable particularity so as to allow him to adequately prepare his defense, avoid surprise at trial, and protect himself against a second prosecution for the same conduct. Addonizio, 451 F.2d at 63-64.

Moreover, as previously discussed, the Government represents that it has provided voluminous discovery in this case, see supra pp. 11-12. Gov't's Resp. 8-9, 18; Discovery Production Letters & Inventory, Gov't's Resp. Ex. A. The Government also states that any information the Defendant does not already have will be provided through the production of Jencks materials. The Government asserts that these discovery materials provide Defendant with "a virtual 'road map' of the Government's case against him." Gov't's Resp. 18. Urban, 404 F.3d at 772 (concluding that access to full discovery further weakens, if not obviates, the need for a bill of particulars).

Against this background, the Court concludes that a bill of particulars is not warranted because the indictment and the discovery materials sufficiently enable Defendant to determine the identities of various co-conspirators, "the scope, duration, and extent of the criminal activities propagated by the criminal enterprise" and the nature of the statutory crimes against him. Traitz, 1999 WL 551924, at *2.

**VIII. CONCLUSION**

The Court concludes that a bill of particulars is not warranted with respect to Defendants Canalichio, Lucibello, Angelina, or Borgesi. Accordingly, the Court denies each of Defendants Canalichio, Lucibello, Angelina and Borgesi's motions for a bill of particulars. An appropriate order will follow.