IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,    :    CRIMINAL ACTION
                            :    NO. 09-00496-01, -03, -04,
                            :    -05, -08, -10, -11, -14, -15
      v.                    :
                            :
JOSEPH LIGAMBI,            :
ANTHONY STAINO, JR.,      :
JOSEPH MASSIMINO,        :
GEORGE BORGESI,          :
DAMION CANALICHIO,      :
LOUIS BARRETTA,          :
GARY BATTAGLINI,        :
JOSEPH LICATA, and      :
LOUIS FAZZINI,           :
                            :
         Defendants.      :


M E M O R A N D U M


EDUARDO C. ROBRENO, J.                September 4, 2012

I.   INTRODUCTION ............................................. 2
II.  BACKGROUND ............................................... 3
III. MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT ........ 4
IV.  MOTION IN LIMINE TO ADMIT RACKETEERING EVIDENCE .......... 13

  A.  Intrinsic Evidence ..................................... 16

  B.  Intrinsic Evidence Admissible Under 403 ................ 26

  C.  Evidence Admissible Under Rules 404(b) and 403 ......... 27

    1.  Motion to Exclude Evidence of Defendant Ligambi's Prior
    Bad Acts and Crimes (ECF No. 713) ....................... 35

      a.  Discussion ........................................ 37

        i.  Intrinsic Evidence ............................... 38

        ii.  Rule 404(b) ..................................... 42

        iii. Probative Value Versus Prejudice ................ 44

      b.  Conclusion ........................................ 46

2.  Defendant Borgesi's Second Supplemental Motion in Limine
to Exclude Other Crimes Evidence Pursuant to Federal Rule of
Evidence 404(b) (ECF No. 828) ............................ 46

   a.  Discussion ........................................ 47

      i.  Objection No. 1 ................................. 47

      ii.  Objection No. 2................................. 50

      iii.  Objection No. 3................................ 51

      iv.  Objection No. 4................................. 53

      v.  Objection No. 5 ................................. 54

      vi.  Objection No. 6................................. 56

      vii.  Objection No. 7................................ 57

   b.  Conclusion ........................................ 58

V.  DISPOSITION OF THE MOTIONS.............................. 58

## I.  INTRODUCTION

The Court held hearings on August 9, 2012, and August
17, 2012, to consider several of the Defendants' and the
Government's motions in limine. For the following reasons, the
Court will deny Defendant Ligambi's Motion to Strike from the
Indictment and Bar All Reference to the History and Structure of
La Cosa Nostra at Trial as well as Defendant Borgesi's Motion in
Limine to Exclude Other Crimes Pursuant to Federal Rule of
Evidence 404(b). ECF Nos. 561, 643, 716. The Court will grant
the Government's Motion in Limine to admit the same racketeering
evidence Defendants sought to exclude. ECF Nos. 648, 649. The
Court also denies Defendant Ligambi's Motion to Exclude Evidence
of Defendant Ligambi's Prior Bad Acts and Crimes. ECF No. 713.
And lastly, the Court will grant in part and deny in part

Defendant Borgesi's Second Supplemental Motion in Limine to Exclude Other Crimes Evidence Pursuant to Federal Rules of Evidence 404(b) and 403. ECF No. 828.

## II. BACKGROUND

Defendant Ligambi is one of fourteen Defendants charged in a fifty-two count Third Superseding Indictment. The case emerged from a criminal investigation spanning ten years and has been twice designated a complex case due to the number of Defendants and the nature and quantity of evidence, which includes over 14,000 intercepted wire and oral communications. See ECF Nos. 166, 520. Among other counts, Defendants are charged with conspiring to conduct and participate in the conduct of the affairs of the criminal enterprise of the Philadelphia La Cosa Nostra ("LCN") Family through a pattern of racketeering activity and through the collection of unlawful debts. The case is specially listed for trial on October 9, 2012.[1]

Pursuant to the Court's Third Scheduling Order, the Court set a hearing date of August 9, 2012, to consider all

---

[1] The case was severed between RICO defendants, those charged with RICO violations, and non-RICO defendants, those who were not charged with RICO violations. Of the eleven defendants charged with a RICO violation, nine are proceeding to trial (two have pled guilty). The non-RICO defendants who were severed will have their trial scheduled after the trial of the RICO defendants has concluded.

motions regarding or based upon Jencks Act material, motions in limine, motions to suppress, and to conduct any necessary <u>Starks</u> or <u>Daubert</u> hearing. ECF No. 521. During the August 9, 2012, hearing the Court heard oral argument on the submitted motions in limine, but continued the hearing to August 17, 2012, to allow both parties to submit further briefing and responses to the pending motions. <u>See</u> ECF No. 765. After hearing further oral argument on the pending motions on August 17, 2012, the motions are now ripe for disposition.

**III. MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT**

      Defendant Ligambi filed a Motion to Strike Surplusage from the Indictment and Bar All Reference to the History and Structure of La Cosa Nostra at Trial. Def.'s Mot. 1, ECF No. 561. Defendant argues that "[b]y aligning the present defendants, who have not been charged with a single violent offense, with notorious past mafia leaders, the United States intends to instill fear in the jury and lead them to the unreasonable and impermissible conclusion that because the defendants are alleged to be members of the mafia, they are guilty of crimes far more heinous than any of those charged in this indictment." <u>Id.</u> at 2. The Government responds that all of the allegations contained in Count One of the Second Superseding

Indictment[2] regarding the structure and history of the

Philadelphia LCN Family, including the names of past members and

alleged bosses, identify and describe the essential elements of

the charged offense of RICO conspiracy.[3] Gov't's Resp. 13, ECF

No. 577.

---

[2] The Second Superseding Indictment was filed on April 18, 2012, and unsealed on April 26, 2012. See ECF No. 407. The Third Superseding Indictment was filed on July 25, 2012, while Defendant Ligambi's Motion to Strike from the Indictment and Bar All Reference to the History and Structure of La Cosa Nostra at Trial was pending. ECF No. 723. Even though Defendant's motion and the Government's response were written before the Third Superseding Indictment was filed, this memorandum evaluates the Defendant's Motion while taking into account the additional factual details provided in the Third Superseding Indictment. Any further references to the indictment in this case will refer to the Third Superseding Indictment.

[3] The Government also filed a Motion in Limine to Admit Racketeering Evidence. See Gov't's Mot. in Limine, ECF No. 649. As the arguments contained in the Government's response and its motion in limine are the same, the analysis of Defendant Ligambi's motion is equally applicable to the Government's motion in limine. Defendants Ligambi, Licata, Borgesi, and Staino, Jr., all responded to the Government's motion in limine and their responses are also considered and cited where relevant in the disposition of these motions. See ECF Nos. 643, 684, 689, 690, 694, 706, 716.

Defendant Staino, Jr., also filed an untimely Motion to Strike Surplusage from Indictment and Bar All References to History and Structure of La Cosa Nostra at Trial. ECF No. 742. His arguments were considered in the disposition of this motion. However, in light of the outcome of Defendant Ligambi's motion, and because Defendants Ligambi and Staino, Jr., raised similar arguments in their respective motions, the Court need not address Defendant Staino, Jr.'s, arguments separately except where different.

Defendant Ligambi moves pursuant to Rule 7(d) for an order that would strike surplusage from the indictment.[4] The paragraphs he regards as surplusage are portions of paragraphs two through five, and seven which are captioned "Structure of the Philadelphia LCN Family" and "Manner and Means of the Enterprise" and which are largely devoted to an overview of the Philadelphia LCN Family, the "enterprise" alleged to be the object of the RICO Counts. Def.'s Supp. Mot. 3-14, ECF No. 804. Defendant Ligambi also moves to strike paragraph twenty-six that falls under the caption of "Loansharking Activities," which avers that "[i]n connection with making and collecting extensions of credit and usurious loans, defendants LIGAMBI, STAINO, MASSIMINO, BORGESI, CANALICHIO, BARRETTA, and BATTAGLINI cultivated and exploited the violent reputation of the Enterprise . . . ." Id. at 26. Defendant Staino, Jr., moves to strike the portion of paragraph twenty-six, in which the indictment alleged that Defendant Staino, Jr., referred to co-Defendant Ligambi when he stated to Victim C: "he's fuckin' flipping, you understand." Def. Staino, Jr.'s, Mot. ¶ 21, ECF No. 742.

---

[4] On August 17, 2012, the Court ordered Defendant Ligambi to identify each specific paragraph in the Third Superseding Indictment he argues to be surplusage. See Order, Aug. 20, 2012, ECF No. 807. Defendant Ligambi complied with this Court's order and his specific objections are referenced in this memorandum.

A court may strike surplusage from an indictment upon a defendant's motion pursuant to Federal Rule of Criminal Procedure 7(d). "This rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Fed. R. Crim. P. 7(d) advisory committee's note. A court may strike surplusage from the indictment or information when it is both irrelevant (or immaterial) and prejudicial. See United States v. Hedgepeth, 434 F.3d 609, 612 (3d Cir. 2006). "Logic demands the conjunctive standard: information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion." Id. at 612.

"In RICO cases, courts have refused to strike allegations of organized crime connections that 'serve to identify the "enterprise" and the means by which its members and associates conduct various criminal activities.'" United States v. Scarpa, 913 F.3d 993, 1013 (2d Cir. 1990) (citing United States v. Napolitano, 552 F. Supp. 465, 480 (S.D.N.Y. 1982)). The term "enterprise" under RICO includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (2006). An

"association-in-fact" enterprise (that is, an enterprise composed of a group of individuals rather than a legal entity such as a corporation) "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981); see also United States v. Irizarry, 341 F.3d 273, 285-86 (3d Cir. 2003). A RICO enterprise "is an entity separate and apart from the pattern of racketeering activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government." Turkette, 452 U.S. at 583; see also Boyle v. United States, 556 U.S. 938, 946 (2009) ("[I]t is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.").

While Defendant Ligambi identifies several parts of the Third Superseding Indictment that he characterizes as surplusage, he has not satisfied the exacting standard required for a successful 7(d) motion. First, he asserts that the previous indictment did not mention the "North Jersey Crew of the Philadelphia LCN Family." While this may be true, the allegations are neither irrelevant nor prejudicial because they

are probative of the association of Defendants Licata and Fazzini with the RICO enterprise. In addition, the Government argues that the inclusion of these allegations demonstrates the organizational structure and part of the manner and means of the RICO enterprise, as Defendant Ligambi initiated Defendant Fazzini into the enterprise in the presence of Defendant Licata and Defendants Licata and Fazzini admitted to being part of the New Jersey Crew of the Philadelphia LCN Family. Gov't's Resp. 7. Accordingly, these passages are neither irrelevant nor prejudicial.

Second, Defendant asserts that the Third Superseding Indictment is more expansive in its charging of the role of the boss and the fact that Defendant is now charged as "the acting boss." Def.'s Mot. 2-3. These allegations are relevant to proving the existence of the RICO enterprise, its structure, and Defendant Ligambi's place at its head. As such, Defendant has no basis to strike this indictment language.

Third, Defendant states that the Third Superseding Indictment lists bosses and other high-ranking Philadelphia LCN Family members who were convicted of crimes of violence, including murders, while the current indictment "does not contain a single act of violence." Id. at 3. First, it is axiomatic that allegations of extortionate extensions of credit and conspiracy to extort fall within the definition of "crimes

of violence" when they operate through the alleged threat of violence and exploitation of the Philadelphia LCN's reputation for violence. See 18 U.S.C. § 16. Second, contrary Defendant's allegation that this language only imputes the past Philadelphia LCN bosses' reputations and criminal records to the present Defendants, this information is probative of the reputation of the enterprise and the fact that the present Defendants allegedly relied on that reputation to achieve the objectives of the enterprise. See Third Superseding Indictment ¶ 6 (charging that one of the principal purposes of the Philadelphia LCN Family, or the enterprise, was "to protect the Enterprise's territory and promote its interests through violence, actual and implied threats of violence, and the cultivation and exploitation of the Enterprise's reputation for violence"). Thus, evidence of past bosses and leaders is relevant as probative of the necessary element of enterprise, that is, it tends to show the continuity of existence and purposes of the enterprise and demonstrates that its manner and means is designed to continue over time. Accordingly, as this evidence is relevant, the Court will not strike it as surplusage.

Fourth, Defendant asserts that the making ceremony is described more extensively and that several actions, such as disloyalty to the "boss," are now alleged to be punishable by bodily harm including death. Def.'s Mot. 9. As with the other

allegations, these allegations are relevant to proving the existence, structure, and purpose of the RICO enterprise charged in the Third Superseding Indictment. Thus, these allegations will not be stricken from the Third Superseding Indictment.

Fifth, Defendant Ligambi objects to paragraph twenty-six because it alleges that "[i]n connection with making and collecting extensions of credit and usurious loans, defendants LIGAMBI, STAINO, MASSIMINO, BORGESI, CANALICHIO, BARRETTA, and BATTAGLINI cultivated and exploited the violent reputation of the Enterprise . . . ." The pattern of racketeering activity alleged includes acts of extortion and extortionate credit transactions. See Third Superseding Indictment ¶ 17. Thus, allegations of implied use of threats through the exploitation of the allegedly violent reputation of the enterprise are probative of these acts of racketeering activity and will not be stricken from the Third Superseding Indictment.[5]

---

[5] Defendant Ligambi concludes by asserting that the purpose of the allegations that he seeks to strike is "to cause the Court and the jury to decide the defendants' guilt based on their membership in the mafia rather than the factual basis of Counts 1 through 52." Def.'s Mot. 1. While Defendant is correct that membership in the mafia is not a crime, nor sufficient to prove a RICO conspiracy, it is a crime for an individual to join an enterprise, otherwise known as the mafia, knowing that the objective or purpose was to conduct or to participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Identifying the alleged enterprise and describing a defendant's role in the enterprise are only a few of the necessary elements the Government must prove beyond a reasonable doubt for a jury to

Last, Defendant Staino, Jr., seeks to strike the alleged reference to co-Defendant Ligambi because Victim C "cannot testify from personal knowledge that defendant Staino was referring to co-defendant Joe Ligambi." Def. Staino, Jr.'s, Mot. ¶ 21. This is one of several examples the Government alleges in the indictment to show how Defendants "cultivated and exploited the violent reputation of the Enterprise to discourage resistance to their extortionate demands and to threaten borrowers that if they did not promptly repay the loans, with interest, they would suffer physical and economic harm." Third Superseding Indictment ¶ 26. Defendant Staino, Jr., does not argue that this evidence is irrelevant or prejudicial, but makes a foundational objection as to a witness's personal knowledge of these events.[6] As this example is relevant as probative evidence of the acts of racketeering alleged in the enterprise's pattern of racketeering, the Court will not strike the portion of

---

find the present Defendants guilty of Count One of the Third Superseding Indictment. Contrary to Defendant Ligambi's contention, the allegations contained in the Third Superseding Indictment identify, describe, and are relevant to the essential elements of the charged offense of RICO conspiracy.

[6] Defendant Staino, Jr.'s, objection as to the lack of personal knowledge of the witness is premature at this stage because the Government has not yet been afforded the opportunity to properly present the testimony of these witnesses to the jury. Defendant Staino, Jr., will have the opportunity to raise this objection anew at trial.

paragraph twenty-six that Defendant Staino, Jr., indicates in
his motion.

In sum, neither Defendant Ligambi nor Defendant
Staino, Jr., has met his burden under Rule 7(d) to successfully
strike the identified passages and thus their motions to strike
will be denied.

## IV.  MOTION IN LIMINE TO ADMIT RACKETEERING EVIDENCE

The Government requests that the Court enter an in
limine order regarding the admissibility of evidence the
Government intends to introduce at trial to prove the RICO
counts averred in the Third Superseding Indictment. Gov't's Mot.
in Limine 3, ECF No. 649. Count One of the Third Superseding
Indictment charges eleven Defendants with racketeering
conspiracy in violation of 18 U.S.C. § 1962(d). In support of
the racketeering averments to be proved at trial, the Government
intends to introduce evidence relating to the historical
activities of the Philadelphia LCN Family and its members and
associates, including evidence of uncharged crimes committed by
members and associates of the Philadelphia LCN Family not on
trial in this case. Id. at 3-4. The Government's evidence will
also include evidence relating to the activities of LCN crime

families operating in other geographic areas of the country.[7] <u>Id.</u>
The Government asserts that the evidence is intrinsic evidence
and thus admissible without reference to Rule 404(b). In the
alternative, it argues that the evidence is admissible under
Rule 404(b), and need not be excluded under Rule 403. Defendant
Ligambi argues that all of this evidence should be excluded

---

[7] Specifically, the Government contends that it will introduce, among other proof, the following categories of evidence:

(A) The testimony of cooperating witnesses, victims and expert witnesses, regarding the continuing existence, history, structure, leadership, membership, rules, initiation procedures, methods of operation, and criminal activities of the Philadelphia LCN Family, and the relationship of the defendants to these LCN activities, members, and associates;

(B) Tape recordings of communications of defendants, unindicted LCN members and associates, victims and others, during which the participants discuss the history, structure, leadership, membership, rules, methods of operation, internal disputes, the recruitment of new members to continue the enterprise, and criminal activities of the Philadelphia LCN Family and other LCN crime families, and the relationship of the defendants to these matters;

(C) The testimony of cooperating witnesses and victims regarding the violent reputation of the Philadelphia LCN Family, including testimony regarding the witnesses' and victims' knowledge of and response to prior acts of violence, threats, and other forms of intimidation, committed by members and associates of the Philadelphia LCN Family;

(D) The testimony of cooperating witnesses regarding criminal activities committed by the cooperating witnesses on behalf of the Philadelphia LCN Family.

Gov't's Mot. in Limine 4.

pursuant to Federal Rule of Evidence Rule 403 because it would be unfairly prejudicial to him. Def.'s Mot. 5-7. Defendant Borgesi seeks to exclude "any reference to a crime of violence, which the Government may seek to introduce as a way of background evidence in connection with alleged organized crime in Philadelphia" under 404(b), or if deemed intrinsic, under 403. Def. Borgesi's Mot. in Limine 7-8, ECF No. 643.[8]

This memorandum will address first, whether this evidence is admissible as intrinsic evidence that satisfies

---

[8] Initially, all of the Defendants who responded to the Government argued in their responses that the Government had not provided sufficient description of the evidence it seeks to admit to allow this Court to conduct the appropriate analyses under the Federal Rules of Evidence. Def. Borgesi's Resp. 4, 7-8, ECF No. 684; Def. Ligambi's Resp. 1-2, ECF No. 689; Def. Staino, Jr.'s, Resp. 2-4, ECF No. 706; Def. Borgesi's Supp. Mot. in Limine, 9, ECF No. 716. The Court conducted a hearing on Defendant Ligambi's Motion and the Government's Motion in Limine on August 9, 2012. The Government had submitted two exhibits on August 8, 2012, in connection with its motion in limine: a summary of portions of the racketeering evidence the government intends to introduce at trial ("Exhibit 1"); and excerpts of portions of transcripts of recorded conversations included in the summary exhibit ("Exhibit 2"). The Court continued the hearing on the Government's motion in limine until August 17, 2012, for among other reasons, to give the Government time to submit an annotated version of the summary exhibit and the Defendants an opportunity to object to specific evidence that Government intends to introduce at trial. See Order, Aug. 9, 2012, ECF No. 765. The Court considered all of the pleadings with respect to these motions and heard oral argument on August 17, 2012. While the Government initially did not provide the specificity necessary to conduct the appropriate analyses of intrinsic versus extrinsic evidence, and admissibility pursuant to Federal Rules of Evidence 404(b) or 403, the Government's more detailed subsequent submissions have satisfied the Court that it has met its burden.

Federal Rule of Evidence 403. And second, it will address
whether this evidence is admissible pursuant to Federal Rules of
Evidence 404(b) and 403.

A.    Intrinsic Evidence

The Court may admit evidence relating to uncharged
misconduct when the evidence is intrinsic to the charges at
issue. See United States v. Green, 617 F.3d 233, 249-50
(3d Cir. 2010); United States v. Gibbs, 190 F.3d 188, 217-18
(3d. Cir. 1999). In Green, the Third Circuit grappled with the
definition of "intrinsic evidence" and in the process rejected
the test adopted by other courts of appeal, namely, whether the
evidence is "inextricably intertwined" with the charged offense.
617 F.3d at 248. The Third Circuit reasoned that "[l]ike its
predecessor res gestae, the inextricably intertwined test is
vague, overbroad, and prone to abuse, and we cannot ignore the
danger it poses to the vitality of Rule 404(b)." Id. However,
the Third Circuit did not reject the concept of intrinsic
evidence entirely, and instead narrowly defined it as follows:

> First, evidence is intrinsic if it "directly proves"
> the charged offense. See e.g., United States v. Cross,
> 308 F.3d 308, 320 (3d Cir. 2002); United States v.
> Gibbs, 190 F.3d 188, 217-18 (3d Cir. 1999) (acts of
> violence admissible as direct proof of the charged
> drug conspiracy). See also United States v. Bowie, 232
> F.3d 923, 929 (D.C. Cir. 2000) (acknowledging that
> evidence of "an act that is part of the charged
> offense . . . is properly considered intrinsic"). This
> gives effect to Rule 404(b)'s applicability only to

evidence of "other crimes, wrongs, or acts." Fed. R.
Evid. 404(b) (emphasis added). If uncharged misconduct
directly proves the charged offense, it is not
evidence of some "other" crime. Gibbs, 190 F.3d at
218. Second, "uncharged acts performed
contemporaneously with the charged crime may be termed
intrinsic if they facilitate the commission of the
charged crime." Bowie, 232 F.3d at 929.

Id. at 248-49.

The Third Circuit has upheld the admission of evidence

of uncharged misconduct in RICO cases, including uncharged

violent crimes, when the evidence is intrinsic proof of the

elements of the racketeering charges in the indictment. See,

e.g., United States v. Ali, 493 F.3d 387, 391-92 (3d Cir. 2007);

United States v. Eufrasio, 935 F.2d 553, 571 (3d Cir. 1991). In

Ali, the defendant was charged with managing and directing a

racketeering enterprise with a pattern of racketeering activity

comprised of multiple fraud schemes and the extortion of a

legitimate business. 493 F.3d at 388. At trial, the government

introduced evidence that the defendant had also extorted drug

proceeds from drug dealers, even though the indictment did not

charge these acts of extortion or any drug trafficking offense.

Id. at 389. The defendant timely appealed the introduction of

this evidence claiming that it was unfairly prejudicial. Id. at

391. The Third Circuit upheld the trial court's admission of the

evidence stating:

The District Court found this evidence was necessary
to establish [defendant's] participation in the

17

alleged RICO enterprise; the continuous existence of the enterprise separate and apart from the criminal acts constituting racketeering activity; its purpose in generating income for the Alis from illegal activity; and its common means of operation to further this purpose. We see no abuse of discretion.

Id.

In Eufrasio, three defendants were convicted in a racketeering case that included illegal gambling, collection of unlawful debts, and attempted extortion. Under Federal Rule of Evidence 403, Defendants appealed the introduction of trial evidence of "uncharged Mafia crimes undertaken during the Scarfo/Riccobene mob war, and of other heinous Mafia Crimes." Eufrasio, 935 F.2d at 571 n.22. The Third Circuit held that the district court did not abuse its discretion under Federal Rule of Evidence 403, and noted that the evidence of the uncharged crimes "went to prove important elements of the RICO counts charged," including the existence and nature of the RICO enterprise, acts taken in furtherance of it and the defendants' knowing association with it. Id. at 573. The Third Circuit further reasoned that:

> The uncharged crimes evidence demonstrated the history, structure and internal discipline of the Scarfo enterprise, and the regular means by which it conducted unlawful business. The disputed evidence was probative of appellants' respective roles within the enterprise's larger organization, history and operations. Thus, the relevance of the uncharged crimes evidence to the government's case against appellants was substantial, certainly enough to offset its potential to cause prejudice for appellants.

Id.

The essence and object of RICO conspiracy, as charged
in Count One of the Third Superseding indictment, is the
agreement to violate the RICO statute, that is, the agreement to
conduct or participate, directly or indirectly, in the conduct
of the affairs of the enterprise through a pattern of
racketeering activity or collection of unlawful debt. Salinas v.
United States, 522 U.S. 52, 63-66 (1997). Counts Two through
Twelve incorporate the averments of Count One in defining the
Philadelphia LCN Family as the racketeering enterprise, and
charge Defendant Staino, Jr., with participating in the affairs
of a racketeering enterprise through the collection of unlawful
debt, in violation of 18 U.S.C. § 1962(c). To prove a violation
of § 1962(c), the Government must prove the following four
elements:

> (1) the existence of an enterprise affecting
> interstate commerce; (2) that the defendant was
> employed by or associated with the enterprise; (3)
> that the defendant participated, either directly or
> indirectly, in the conduct or the affairs of the
> enterprise; and (4) that the defendant participated
> through a pattern of racketeering activity or
> collection of unlawful debt.

Irizarry, 341 F.3d at 285.

An "association-in-fact" enterprise is an enterprise
composed of "a group of individuals, associated together for a
common purpose of engaging in a course of conduct." Boyle, 556

U.S. at 944 (quoting Turkette, 452 U.S. at 583). The Supreme Court in Boyle concluded that an association-in-fact enterprise must have at least three structural attributes: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Id. at 946. The existence of the enterprise is an element that is distinct and separate from the "pattern of racketeering activity" element, although proof of the existence and operation of the enterprise may also be relevant proof of the pattern of racketeering element. See Turkette, 452 U.S. at 583.

The Government contends that evidence of the structure and history of the criminal enterprise of the Philadelphia LCN Family is relevant to prove the following: "(a) the independent and continuous existence of the criminal enterprise, separate and apart from the criminal acts constituting the pattern of racketeering activity and the collection of unlawful debt; (b) the common purposes unifying various activities of the enterprise, namely, generating money through violence and intimidation; (c) Defendant Ligambi's direct and knowing association with and participation in the conduct of the affairs of the criminal activities of the enterprise; (d) organizational structure of the enterprise, namely, the leadership role of Defendant Ligambi and the supporting roles of subordinates; and

(e) the common manner and means of operating the enterprise to accomplish its objectives." Gov't's Resp. 13. After reviewing the Government's detailed, annotated, and sealed[9] exhibit concerning the summary of the evidence, the Court agrees that the evidence the Government intends to introduce is probative of essential elements of the RICO counts alleged in the indictment. Specifically, the evidence is relevant to showing the existence, structure, internal discipline, and nature of the alleged enterprise; the longevity of the enterprise sufficient for those associated with the enterprise to pursue its purposes; the purposes of the enterprise, such as generating money through criminal acts, protecting the enterprise's territory and promoting its interests through violence, and managing, supervising, and participating in policies concerning the manner in which the enterprise made money through illegal means; the Defendants' knowing participation in the enterprise, and each Defendant's respective role within the "enterprise's larger organization, history and operations," Eufrasio, 935 F.2d at 573; and the enterprise's common means of operation to accomplish its objectives.

---

[9] Defendant Borgesi's Second Supplemental Motion in Limine (ECF No. 828) and the Government's Exhibit 1 have been filed under seal. Given that the Court finds that a substantial portion of this evidence is relevant and admissible at trial, these documents will be unsealed.

Allowing the admission of this evidence comports with the legal precedents of Ali and Eufrasio, as it is intrinsic proof of the enterprise, Defendants' knowing participation in it, and the pattern of racketeering elements of the racketeering offense. The fact that some of this evidence predates the time period reflected in the Third Superseding Indictment does not make it any less probative of the existence, nature, structure and membership, and operations of the current manifestation of the Philadelphia LCN Family.[10] This is particularly true here,

_____

[10] Defendant Staino, Jr., argues that the cases cited in the Government's motion in limine all deal with conduct undertaken contemporaneously with the charged racketeering offense. Def. Staino, Jr.'s Resp. 4, ECF No. 694. While that may be true, one of the categories of evidence that the Third Circuit defined as "intrinsic" was evidence that "directly proves" the charged offense, which does not include a temporal restriction. See Green 617 F.3d at 249. The temporal restriction of "contemporaneous" was included in the second category of "intrinsic" evidence, that is, evidence of uncharged conduct contemporaneous with the commission of the offense if it facilitated the commission of the offense. See id. Thus, if the Court finds that the evidence directly proves the charged racketeering conspiracy, that the evidence is not contemporaneous is of no consequence. Nevertheless, much of the evidence the Government seeks to produce consists of Defendants' recorded discussions during the course of the charged conspiracy of events that occurred before the charged conspiracy as well as some acts that are not specifically charged as offenses in the indictment. Although certain of the events that the Defendants reference in their recorded statements occurred prior to the outset of the conspiracy charged here, these are contemporaneous statements made during the course of the conspiracy, which are relevant proof of the existence of the enterprise, the pattern of racketeering, and the Defendants' familiarity with the nature of the enterprise, its criminal objectives, and its use of violence and threats of violence to achieve its objectives.

where many statements linking Defendants to these prior acts and events were statements Defendants themselves made during the course of the conspiracy. Among other averments, Count One states that the Philadelphia LCN Family "has been in substantially continuous operation for much of the Twentieth Century into the Twenty-First Century." Third Superseding Indictment ¶ 5. The antecedents of this allegedly continuous enterprise inform the current defining characteristics of the enterprise as explained and alluded to through statements Defendants themselves made during the time period of the alleged racketeering conspiracy. Much of the Government's evidence consists of recordings of statements that Defendants made regarding the structure, membership, activities, protocols, rules, and other aspects of the Philadelphia LCN Family. Accordingly, the evidence is relevant proof of the existence of the enterprise, the pattern of racketeering, and the Defendants' knowing and intentional association with and participation in the affairs of the enterprise.[11]

---

[11] At oral argument, Defendants argued that the Third Circuit's previous cases concerning the Philadelphia LCN Family only allowed intrinsic evidence relevant to the current manifestation of the LCN, such as the "Scarfo LCN Family." While the Court questions this characterization of previous cases, in the circumstances of this case the Government has charged an enterprise in the indictment with substantially continuous operation over the past 40 years, and which the Defendants have allegedly confirmed through their discussions during the course of the conspiracy currently charged. Contrary to what Defendants

Moreover, the Government's proposed evidence is relevant to the continuity element of the pattern of racketeering activity and the predicate racketeering acts of extortion and loansharking. See United States v. Bergrin, 650 F.3d 257, 267 (3d Cir. 2011); United States v. DiSalvo, 34 F.3d 1204 (3d Cir. 1994); United States v. Traitz, 871 F.2d 368, 389 (3d Cir. 1989). Specifically, the evidence that the Philadelphia LCN Family has existed over time and has been engaging in similar criminal activities, for the same purpose, is relevant to the threat of continuity posed by the enterprise. Additionally, as the pattern of racketeering activity of the enterprise includes acts of extortion and extortionate credit transactions, the Government must establish the elements of the use of threats or implied use of threats, which can be accomplished through evidence of the violent reputation of the enterprise, including specific acts of violence. Thus, the

---

argue--namely, that the enterprise charged is delimited by the name of its current leader--the Government seeks to show that the Philadelphia LCN Family enterprise, as described in the indictment, existed over time, with substantially the same structure, and has been engaging in similar criminal activities for the same purposes. Gov't's Mot. in Limine 13. "Generally speaking, it is for the prosecutor, not the defendant, to shape the government's trial strategy with a view toward sustaining its heavy burden of proof." United States v. Schwartz, 790 F.2d 1059, 1061 (3d Cir. 1986). Furthermore, as explained above, the relevance and probative nature of the Government's racketeering evidence comes, in substantial part, from the statements made by the Defendants themselves during the time period of the racketeering conspiracy.

evidence establishing the reputation of the Philadelphia LCN
Family for using violence, threats, and intimidation to achieve
its criminal objectives is relevant to explaining how members of
the enterprise could leverage the reputation of the enterprise
to effectively enforce and carry out their extortionate money-
making activities. See DiSalvo, 34 F.3d 1212 (upholding the
jury's finding that defendants knowingly participated in the
implicit threat of the use of violence within the meaning of 18
U.S.C. § 894 where defendants solicited the underboss of the
Philadelphia LCN Family to collect the debt "kn[owing] that the
use of threats of violence to collect debts was the modus
operandi of the LCN and, particularly, of Scarfo and Leonetti");
Eufrasio, 935 F.2d at 573; see also Traitz, 871 F.2d at 389-90
(upholding the admission of evidence of the defendants'
uncharged acts of violence pursuant to Federal Rules of Evidence
403 and 404(b) because such evidence showed a "shared tradition
of violence").

In sum, the Government's proposed racketeering
evidence is intrinsic evidence of the racketeering offenses
charged in the Third Superseding Indictment, and therefore the
Court finds the evidence contained in Exhibit 1 relevant and
probative of essential elements of the racketeering offenses
charged.

B.  Intrinsic Evidence Admissible Under 403

In addition to deciding whether the evidence contained in Exhibit 1 is intrinsic, the evidence must also be evaluated against the unfair prejudice standard of Rule 403. "Relevant evidence is admissible, except as otherwise provided" by the Constitution, an act of Congress, rules prescribed by the Supreme Court or the Federal Rules of Evidence. Fed. R. Evid. 402. Rule 403 provides:

> The court may exclude evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. Here, the Court is satisfied that the evidence that the Government is seeking to present directly proves elements of the RICO conspiracy and Defendant Staino, Jr.'s, substantive RICO counts.[12] The Government has demonstrated a genuine need for this evidence, as it is essential to proving elements of the charged racketeering offenses beyond a reasonable doubt. Thus, the relevance of this evidence to the Government's case against Defendants is considerable, certainly enough to offset any claim that unfair prejudice to the

---

[12] This Rule 403 analysis does not apply to Defendant Ligambi's Motion to Exclude Evidence of Defendant Ligambi's Prior Bad Acts and Crimes (ECF No. 713) or Defendant Borgesi's Second Supplemental Motion in Limine to exclude Other Crimes Evidence (ECF No. 828) because the Rule 403 analyses for these motions are subsumed within this memorandum's discussion of each motion. See infra pp. 35-58.

Defendants substantially outweighs it. Moreover, the risk of unfair prejudice would be minimized by the use of appropriate limiting instructions.

Although the Court finds the evidence contained in Exhibit 1 to be admissible as intrinsic evidence, as the Government has alternatively offered some of this evidence under Rule 404(b) and Defendants have objected to some of this evidence under Rule 404(b), the Court will now assess specific portions of the Government's Exhibit 1 pursuant to the mandates of Rule 404(b).

### C.    Evidence Admissible Under Rules 404(b) and 403

All evidence of uncharged misconduct, which does not fall into the parameters of intrinsic evidence, may be admitted under Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) provides in pertinent part that evidence of "crimes, wrongs, or other act[s]" is inadmissible to prove a person's character in order to show action in conformity therewith, but admissible for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). In the context of Rule 404(b), "similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Huddleston v. United States, 485 U.S. 681, 689

(1988) (emphasis added). To be admissible under Rule 404(b),
evidence of uncharged crimes or wrongs must: (1) have a proper
evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and
(4) be accompanied by a limiting instruction (where requested)
about the purpose for which the jury may consider it. Green, 617
F.3d at 249 (citing Huddleston, 485 U.S. at 691-92).

The Third Circuit has stated that Rule 404(b) is a
rule of "inclusion." Id. at 244. It states a general rule of
admissibility, subject to a single exception—"evidence of other
wrongful acts [is] admissible so long as it was not introduced
solely to prove criminal propensity." Id. The Third Circuit,
however, has cautioned that "[d]espite [its] characterization of
Rule 404(b) as a rule of admissibility . . . [it has] expressed
[its] concern that, although the proponents of Rule 404(b)
evidence 'will hardly admit it, the reasons proffered to admit
prior act evidence may often be potemkin village, because the
motive, we suspect, is often mixed between an urge to show some
other consequential fact as well as to impugn the defendant's
character.'" United States v. Himelwright, 42 F.3d 777, 781-82
(3d Cir. 1994) (quoting United States v. Jemal, 26 F.3d 1267,
1272 (3d Cir. 1994)).

In addition to the Rule 404(b) test, evidence of other
crimes must also be evaluated against the unfair prejudice
standard of Rule 403. Even if admissible under Rule 404(b), the

Court must exclude evidence under Rule 403 where the probative value of the evidence is substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403. However, evidence that bears on a relevant issue in the case, though possessing the potential to damage the defendant's cause, is not inadmissible for that reason alone. United States v. Bergrin (Bergrin II), 682 F.3d 261, 279-80 (3d Cir. 2012) ("It must always be remembered that unfair prejudice is what Rule 403 is meant to guard against, that is, prejudice 'based on something other than [the evidence's] persuasive weight.'" (quoting United States v. Cruz-Garcia, 344 F.3d 951, 956 (9th Cir. 2003))).

In DiSalvo, a defendant charged with non-drug-related RICO violations appealed evidence introduced at trial of his relationship with a drug dealer under Federal Rules of Evidence 404(b) and 403. 34 F.3d at 1221 n.3. The district court admitted the evidence as proof of the defendant's "knowing participation in and association with the RICO enterprise." Id. The Third Circuit affirmed the district court's holding that the evidence was probative of "essential elements of the RICO charges and [was] also offered to show [defendant's] familiarity with the enterprise's illegal activities, the nature of his relationship with other conspirators and members of the RICO enterprise, and his knowledge of the violent nature of . . . the enterprise." Id.

The Third Circuit in DiSalvo also held that evidence regarding the violent reputation of members of the Philadelphia LCN Family was properly admitted under Rule 404(b). Id. at 1213-14. At trial, Philip Leonetti, a former underboss of the Philadelphia LCN Family, testified regarding the criminal activities of the organized crime family, including his participation in several mob-related murders, and the LCN's reputation for "routinely extort[ing] drug dealers, loansharks, and bookmakers who were not 'with' anyone." Id. at 1213. Defendants argued on appeal that Leonetti's reputation could not be considered as against them, but the Third Circuit rejected this argument and held that these uncharged acts of violence were relevant and admissible under Rule 404(b) to show the defendants' "'shared tradition of violence.'" Id. at 1214 (quoting Traitz, 871 F.2d at 389).

In Traitz, the defendants were convicted of racketeering conspiracy, extortionate debt collections, extortion, and related offenses. 871 F.2d at 375. The defendants objected to the trial court's admission of twenty-four tape recordings involving "uncharged acts of violence." Id. at 389. The Third Circuit held that the tapes were properly admitted under Rule 404(b) as relevant proof of the charged offenses concluding that:

> In ruling on a suppression motion, the district court found, and the appellants do not contest, that the evidence of other violence goes to a "shared tradition" of violence and toward showing a "symbiotic relationship." Therefore, the evidence shows "the background of the charges, the parties' familiarity with one another and their concert of action." United States v. O'Leary, 739 F.2d 135, 136 (3d Cir. 1984). Thus, in a conspiracy context these matters constituted permissible grounds for admission of evidence of other violence under Rule 404(b). Id. at 136-137.

Id.

Evidence of uncharged misconduct may also be admissible under 404(b) to address the credibility of witnesses, and their motives for testifying. See United States v. Scarfo, 850 F.2d 1015, 1020 (3d Cir. 1988); see also Green, 617 F.3d at 250 (holding that the admission of uncharged misconduct under 404(b) was proper because it was relevant to the witness's motive to cooperate with authorities due to her belief that the defendant was dangerous). In Scarfo, the Third Circuit held that evidence of violent, uncharged acts of the Philadelphia LCN Family was relevant and admissible to explain the motives of the government's cooperating witnesses for testifying against their former criminal partners. 850 F.2d at 1020. The district court held, and the Third Circuit agreed, that excluding evidence of various uncharged murders in the circumstances of the case "would be prejudicial to the government" because the evidence was essential in the "government's effort to establish the

credibility of its disreputable, yet indispensable, witnesses."
Id.[13]

The Government contends that in the alternative, the
evidence concerning the history and structure of the
Philadelphia LCN Family and prior violent acts committed by LCN
members should be admitted under Rule 404(b) to demonstrate the

---

[13] The Third Circuit's discussion of these government witnesses
included, in relevant part, the following:

> Caramandi and DelGiorno had extensive criminal
> backgrounds. The revelation of these histories would
> necessarily undermine the jury's willingness to
> believe the witnesses, particularly if the government
> were barred from full disclosure. The witnesses'
> unsavory mores were hardly likely to inspire
> confidence in their truthfulness and, therefore, it
> was important for the jury to realize that Caramandi
> and DelGiorno had been granted immunity for the very
> murders that they asserted Scarfo had ordered.
> Moreover, Caramandi's belief that he had been
> threatened by Scarfo and his fear that his daughter's
> life was in jeopardy were probative of his motives to
> testify. Similarly, DelGiorno inferred from the
> conduct of other organization members that he, too,
> had been marked for death, a realization that prompted
> him to approach the authorities and arrange for
> cooperation.
>
> That Scarfo had such tight control over an
> organization capable of executing those who incurred
> his displeasure was obviously an essential fact the
> jury needed to evaluate in considering the extent to
> which fear swayed the two witnesses. That the
> witnesses themselves had participated in the slaying
> of compatriots accused of disloyalty to the crime
> family tended to give credence to their dread that
> they were slated for the same fate.

Id.

background of the charges, whether the Defendants had knowledge of or an intent to participate in the conspiracy, as well as to evaluate the witnesses' motives for cooperating with the Government. Gov't's Mot. in Limine 10-12. The Defendants generally object to the admission of this evidence under 404(b) for the following reasons: (1) the Government's general categories of evidence it seeks to present deprive the Court of the opportunity to conduct a proper analysis of whether the evidence is "intrinsic" or satisfies the burden of 404(b), Def. Borgesi's Resp. 3-5; Def. Ligambi's Resp. 2; Def Licata's Mot. & Resp. 4, ECF No. 690; and (2) the Government's motion would allow the introduction of the "forty year history of the Philadelphia LCN," Def. Borgesi's Resp. 7; Def. Staino, Jr.'s, Resp. 2. Defendant Ligambi objects to a specific prior bad act as it relates to him. Def. Ligambi's Mot. to Exclude, ECF No. 713. Lastly, Defendant Borgesi submitted a second supplemental motion under seal to exclude specific prior bad acts as they relate to him. Def. Borgesi's Second Supp. Mot., ECF No. 828.

Under Rule 404(b) the Government needs "to provide notice of [its] intention to use the evidence and identify the specific, non-propensity purpose for which [it] seeks to introduce it (i.e., allowing the jury to hear the full story of the crime)." See Green 617 F.3d at 249. Here, while the Government initially failed to identify with precision the

specific, non-propensity purposes for which it sought to introduce specific evidence,[14] it rectified this issue through the submission of an annotated version Exhibit 1. Thus, Defendants' first general objection is now moot. Defendants' second general objection is also similarly dismissed because it is plain from the language of Exhibit 1 that the Government does not intend to introduce a "forty year history of the Philadelphia LCN Family," but rather substantially circumscribes the scope of its racketeering evidence to evidence that the Defendants themselves referenced and provided in recorded statements and admissions concerning prior acts and activities of the Philadelphia LCN Family. Thus, the Court turns to the specific objections raised by Defendants Ligambi and Borgesi.[15]

---

[14] Instead, the Government had solely stated with respect to 404(b) that "the evidence is offered for proper evidentiary purposes and is relevant proof of those issues." Gov't's Mot. in Limine 15.

[15] The Government indicated eight pieces of evidence that may be introduced under 404(b). See Exhibit 1 pp. 2, 4, 12, 16, 18, 21, 26, 38. None of the Defendants specifically objected to any of the 404(b) evidence indicated, aside from Defendants Ligambi and Borgesi. Thus, the Court only considers the specific objections contained within Defendant Ligambi's and Defendant Borgesi's motions.

     The Court notes that the evidence referenced in Exhibit 1 is not the only potential 404(b) evidence the Government seeks to introduce. See, e.g., Def. Canalichio's Mot., ECF No. 747; Order, Aug. 20, 2012, ECF No. 814. The Court has also previously ruled as inadmissible evidence offered under Rule 404(b) pertaining to Defendants Licata and Fazzini. See Order, Aug. 21, 2012, ECF No. 813.

1.   Motion to Exclude Evidence of Defendant Ligambi's
     Prior Bad Acts and Crimes (ECF No. 713)

Defendant Ligambi moves to exclude evidence of all

Defendants' prior bad acts and crimes under Federal Rule of

Evidence 404(b). Defendant states that upon review of the

discovery production pursuant to the Jencks Act, it was revealed

that several witnesses referenced a number of prior "bad acts"

or crimes committed by Defendants. Def. Ligambi's Mot. to

Exclude 1. Defendant argues that none of these prior bad acts

will be offered for a proper evidentiary purpose and even if the

Court were to find that the Government had established a proper

evidentiary purpose, the prior bad acts evidence could not

survive the Rule 403 balancing test. Id.

Defendant also seeks particularly to bar the

Government from introducing evidence of a murder charge, of

which Defendant Ligambi was acquitted in 1997. Id. at 4.

Defendant states that he was charged with murder in 1987 and

convicted at trial.[16] Id. However, he asserts that his conviction

---

[16] Defendant Ligambi's co-defendants included then-LCN boss
Nicodemo Scarfo, former underboss Salvatore Merlino, former capo
Lawrence Merlino, capo Francis Iannarella, soldier Phillip
Narducci, soldier Frank Narducci, and soldier Nicholas Milano.
Eugene Milano, a made member of the Philadelphia LCN Family,
pled guilty to participating in the murder of Frankie Flowers
and testified against Defendant Ligambi and the other defendants
at the state murder trial. He testified that he and the
defendants on trial carried out the murder of Frankie Flowers on
behalf of and in furtherance of the Philadelphia LCN Family.

was subsequently overturned on appeal in 1997, and that he was acquitted on retrial. Id. at 5. Defendant argues that to admit evidence of that charge would be "the manifestation of unfair prejudice and would lend nothing to proving the present allegations." Id.

The Government responds only with respect to the evidence concerning the murder of bookmaker Frank D'Alfonso, also known as "Frankie Flowers." Gov't's Resp. 1, ECF No. 738. The Government argues that it "constitutes relevant and intrinsic proof of the existence and nature of the enterprise; the history, operation and continuity of the enterprise; the structure and methods of operation of the enterprise; the defendants' participation in and association with the enterprise and its other members and associates; and the enterprise's reputation for violence and its effect upon its members and victims." Id. While the Government does not intend to offer evidence that Defendant Ligambi was personally involved in this murder, it does intend to offer the evidence to show that past violent crimes, including the murder of Frankie Flowers, allegedly committed by members of the Philadelphia La Cosa Nostra Family "in furtherance of the racketeering conspiracy has allowed this criminal enterprise to cultivate and

---

Based upon his testimony and other evidence in the case, the jury convicted all of the defendants of murder. Gov't's Resp. 2.

exploit its well-earned reputation for violence to instill fear in its victims and to carry out its extortionate money-making activities." Id.

The Government asserts that a cooperating government witness in this case, Eugene Milano, a made member of the Philadelphia LCN Family, will testify that he and other members of the Philadelphia LCN Family committed violent crimes, including the murder of Frankie Flowers, as part of the racketeering conspiracy to project power, instill fear, and accomplish various extortionate money-making activities. Id. at 2. Additionally, the Government states that one of the victims will testify, consistent with his grand jury testimony, that he yielded to the extortionate demands of the Philadelphia LCN Family and paid "street tax" payments to stay in business as a bookmaker because he did not want to end up like Frankie Flowers. Id.

### a.  Discussion

Defendant first makes a blanket request covering all potential prior bad acts and crimes under 404(b). However, this Court cannot properly make a general ruling on abstract questions of the admissibility of unspecified proffered prior bad acts and crimes. Defendant has not pointed to concrete prior bad acts and crimes that the Government has noticed it intends

to introduce; therefore, the Court cannot assess the evidence within the parameters of Rules 404(b) and 403. Nor is it appropriate to enter a sweeping order preventing the Government from introducing any of Defendants' prior bad acts or crimes without knowing what that evidence consists of or the context in which it will be introduced. For these reasons, Defendant's first request is denied.

As for Defendant's second request with respect to his 1997 acquittal, the Court will first analyze whether this evidence is intrinsic evidence of the RICO conspiracy charged in Count One. Alternatively, the Court will analyze whether this evidence is admissible pursuant to Federal Rule of Evidence 404(b). Finally, under either analysis the Court will balance whether the probative value of the evidence is substantially outweighed by the risk of unfair prejudice in accordance with Federal Rule of Evidence 403.

### i.    Intrinsic Evidence

The evidence of the 1985 murder of bookmaker Frank D'Alfonso, also known as "Frankie Flowers," is only admissible if relevant to issues of consequence in this case. Relevant evidence is evidence having "any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid.

401. To establish that evidence is relevant, "[a]ll that is needed is some showing of proper relevance"; the burden is not onerous. United States v. Sampson, 980 F.2d 883, 888 (3d Cir. 1992).

The first step in evaluating whether to admit evidence of a crime, wrong or other act, is determining whether there is sufficient evidence to conclude that the act occurred. See Huddleston, 485 U.S. at 689. Rule 104(b) of the Federal Rules of Evidence provides that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b). A court's task in this regard is simply to decide in accordance with Rule 104(b), "whether the jury could reasonably find the conditional fact [here, that members of the Philadelphia LCN Family were responsible for the death of Frankie Flowers] by a preponderance of the evidence." Huddleston, 485 U.S. at 690. In making this determination, the Court must not make credibility determinations or weigh the evidence because to do so would usurp the role of the jury. Bergrin II, 683 F.3d at 279.

Here, the Government intends to prove the conditional fact that the murder of Frankie Flowers occurred at the hands of the Philadelphia LCN Family through a cooperating government witness. Specifically, Milano will testify that he and other

members of the Philadelphia LCN Family committed violent crimes, including the murder of Frankie Flowers, as part of the racketeering conspiracy to project power, instill fear, and accomplish various extortionate money-making activities. Additionally, one of the victims intends to testify that he yielded to the extortionate demands of the Philadelphia LCN Family and paid "street tax" payments to stay in business as a bookmaker because he did not want to end up like Frankie Flowers. Based upon this testimony, a jury could reasonably find that the Philadelphia LCN Family was responsible for the murder of Frankie Flowers. The fact that the defendants were acquitted of the murder on the high standard of beyond a reasonable doubt, does not bar this conclusion as the standard here is only by a preponderance of the evidence. Because the Government has proffered evidence that, if accepted by the jury, would establish that the Philadelphia LCN Family was responsible for Frankie Flowers' murder, the Court finds that this evidence satisfies Rule 104(b).

The second step is for the Court to decide whether this proffered evidence is relevant. The Government maintains that this evidence is relevant because it makes it more probable than not that the criminal enterprise has been and continues to be successful in cultivating and exploiting its well-earned reputation for violence to instill fear in its victims and to

carry out its extortionate money-making activities. Gov't's Resp. 6. Count One of the Third Superseding Indictment avers that one of the principal purposes of the Philadelphia La Cosa Nostra Family was "to protect the Enterprise's territory and promote its interests through violence, actual and implied threats of violence, and the cultivation and exploitation of the Enterprise's reputation for violence." Third Superseding Indictment ¶ 6. Count One also describes one aspect of the manner and means of the racketeering conspiracy as follows: "To cultivate, exploit, and extend the Enterprise's affairs and its reputation for violence, and thereby to achieve its purposes, the defendants and their coconspirators used, and conspired to use, acts of violence, including assaults and attempted assaults." Id. ¶ 20. As evidence of past violent crimes committed by members of the Philadelphia LCN Family is probative of how members of this enterprise were able to carry out the enterprise's extortionate money-making activities, the Court deems this evidence relevant.

Moreover, this evidence is intrinsic proof of one of the principal purposes of the Philadelphia LCN Family enterprise, the manner and means of the conspiracy, and the predicate racketeering acts of extortion and loansharking. See Bergrin, 650 F.3d at 267; Traitz, 871 F.2d at 389. Specifically, evidence establishing the reputation of the Philadelphia LCN

Family for using violence, threats, and intimidation to achieve its criminal objectives is relevant to explaining how the enterprise could effectively enforce its will upon others to carry out its extortionate money-making activities. Eufrasio, 935 F.2d at 573. Accordingly, the Court finds that evidence of Frankie Flowers' murder is intrinsic evidence of the racketeering offenses charged in the Third Superseding Indictment.

## ii.    Rule 404(b)

The Court also finds that the evidence of the murder is admissible under Rule 404(b). As discussed above, the evidence is probative of, among other elements, the existence and purposes of the enterprise, and the predicate racketeering acts of extortion. The next step in deciding whether to admit evidence under Rule 404(b) is evaluating whether the proponent of the evidence established that the evidence is being offered for a proper purpose. If the proffered "evidence only goes to show character, or that the defendant had a propensity to commit the crime, it must be excluded. Where, however, the evidence also tends to prove some fact besides character, admissibility depends upon whether its probative value outweighs its prejudicial effect." United States v. Lee, 612 F.3d 170, 186 (3d Cir. 2010) (internal citations omitted). If the Government

offers evidence of other wrongful acts, the Government must do more than state that it is being offered for one of the proper purposes listed in Rule 404(b). Becker v. ARCO Chemical Co., 207 F.3d 176, 191 (3d Cir. 2000) ("[A] proponent's incantation of the proper uses of [Rule 404(b) evidence] . . . does not magically transform inadmissible evidence into admissible evidence." (internal citations omitted)). The Government "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed . . . [such an act] before, he therefore is more likely to have committed this one." Id. (internal citations omitted).

Here, the Government contends that evidence of Frankie Flowers' murder is being offered for the purposes of establishing the reputation of the Philadelphia LCN Family for using violence and threats of violence to accomplish its illegal objectives and establishing the credibility of the cooperating witness. The Government has also stated that it will not implicate Defendant Ligambi, or any of the other Defendants in this case, in this murder.

The Court concludes that the evidence of Frankie Flowers' murder is relevant to the reputation of the Philadelphia LCN Family and the credibility of the cooperating witness, which are proper purposes under Rule 404(b). In this

case, the Government has fulfilled its burden of providing a chain of logical inferences that is probative of a material issue other than Defendant's character or a trait of character, particularly since the Government will not implicate Defendants, or in particular, Defendant Ligambi, when introducing this evidence.

### iii.    Probative Value Versus Prejudice

The admissibility of evidence of Frankie Flowers' murder turns on whether the probative value of this evidence is substantially outweighed by the danger of unfair prejudice. Rule 403 provides that relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "In making this determination, the trial judge must appraise the genuine need for the challenged evidence and balance that necessity against the risk that the information will influence the jury to convict on improper grounds." Scarfo, 850 F.2d at 1019. In United States v. Cook, the Third Circuit recited several factors to be considered in this balancing:

> [W]e must balance the actual need for that evidence in view of the contested issues and the other evidence available to the prosecution, and the strength of the

> evidence in proving the issue, against the danger that
> the jury will be inflamed by the evidence to decide
> that because the accused was the perpetrator of the
> other crimes, he probably committed the crime for
> which he is on trial as well. . . . The treasured
> principles underlying the rule against admitting
> evidence of other crimes should be relaxed only when
> such evidence is genuinely needed and would be
> genuinely relevant.

538 F.2d 1000, 1003 (3d Cir. 1976) (footnote omitted).

As discussed above, the evidence is probative of how the Philadelphia LCN Family has been and continues to be successful in cultivating and exploiting its reputation for violence to instill fear in its victims and to carry out its extortionate money-making activities. On the other hand, Defendant Ligambi argues that the evidence would be unfairly prejudicial because: (1) the fact that he was acquitted of the charge makes its probative value very low; (2) the fact that the charge was one as serious as murder makes the risk of unfair prejudice incredibly high; and (3) the dissimilarity of the violent nature of the prior charge and the nonviolent nature of the present charges completely detracts from any probative value or permissible evidentiary use. Def. Ligambi's Mot. to Exclude 6. There is a danger that the jury could be "inflamed by" the evidence of prior violent acts, such as the murder of Frankie Flowers, and convict Defendants independent of the Government's proof regarding the current racketeering conspiracy. However, given that the Government represents that it will not implicate

any of the Defendants in the murder and that the evidence is relevant to essential elements of the racketeering offenses charged, the Court finds that the risk of unfair prejudice does not substantially outweigh the probative value of the evidence. Furthermore, an appropriate limiting instruction would diminish any risk of unfair prejudice of the proffered evidence.

### b. Conclusion

Based on the aforementioned, the Court finds that the evidence of Frankie Flowers' murder is intrinsic to the racketeering offenses charged, and is also admissible under Federal Rules of Evidence 404(b) and 403.

### 2. Defendant Borgesi's Second Supplemental Motion in Limine to Exclude Other Crimes Evidence Pursuant to Federal Rule of Evidence 404(b) (ECF No. 828)[17]

In his supplemental filing, Defendant Borgesi objects to seven portions of the proposed trial testimony of cooperating witness Louis Monacello, on the ground that the evidence is not admissible for any proper purpose under Federal Rule of Evidence 404(b), and is unfairly prejudicial under Rule 403. Def. Borgesi's Second Supp. Mot. 4-10. The Government responded that each of the seven pieces of evidence is relevant and admissible under Rules 404(b) and 403. Gov't's Resp. 1-7, ECF No. 831.

---

[17] See supra note 9.

### a. Discussion

Louis Monacello is a cooperating witness who has pled guilty to participating in the racketeering conspiracy charged in Count One. Monacello will testify that he has been a member of George Borgesi's "crew" since 1982. Exhibit 1 p. 16. Defendant Borgesi allegedly told Monacello that Defendant Borgesi was a member of the Philadelphia LCN Family, and Monacello knew that Defendant Borgesi was involved in sports-bookmaking. Monacello will testify that he decided to become a cooperating witness after learning that Defendant Ligambi intended to murder him. Id. at 17. Among other things, Monacello will testify about the following uncharged misconduct and acts of violence, and the Court will assess each in turn pursuant to Rules 404(b) and 403.

### i. Objection No. 1

Monacello will testify that in the mid-1990s, Borgesi admitted to Monacello that he had participated in eleven murders and was a "professional." The evidence that the Government has submitted to support this is outlined in an FBI 302 which asserts the following:

> On some unknown date in the mid-1990's George Borgesi and Louis Monacello were driving in South Philadelphia passing Mifflin Street. Monacello alleges that he stated to Borgesi "how about the guy who was just killed." Monacello then alleges that at that moment

> Borgesi turned up the radio and motioned with his
> thumb by pointing to his chest and then gesturing with
> an open hand by closing it twice flashing what
> Monacello understood as 5-5-1. Monacello [sic] as
> Borgesi was doing the hand gesturing he was whispering
> and mouthing the words, "I did it, I'm, a
> professional."

Def. Borgesi's Second Supp. Mot. 4-5.

The Government argues that this evidence is being offered for several permissible purposes under Rule 404(b). Gov't's Resp. 1. First, the Government states that this evidence serves directly to prove that Defendant Borgesi intentionally joined and continued to associate with the currently charged racketeering conspiracy and enterprise, knowing its criminal purposes and methods.[18] Second, The Government argues that the admission is relevant to show that Monacello, who collected debts on behalf of the Philadelphia LCN Family as a member of Defendant Borgesi's crew, knew of Defendant Borgesi's willingness to use violence, which allowed Monacello to rely upon the violent reputation of Defendant Borgesi and the Philadelphia LCN Family to perform his duties as an associate of the enterprise. Id. at 2. Lastly, the Government contends that Defendant Borgesi's admission is relevant to Monacello's credibility as to why he is testifying for the Government, which

---

[18] Although Defendant Borgesi's alleged admission predated the time period of the racketeering conspiracy charged in Count One, Defendant Monacello will testify that he was a member of Defendant Borgesi's crew at the time of this incident. Id. at 2.

it expects the Defendants will aggressively challenge at trial.[19]
<u>Id.</u>

Defendant Borgesi first objects to this evidence under Rule 104(b), stating that no jury would accept Monacello's testimony explaining how Defendant Borgesi communicated the message that he was a professional killer. Specifically, he argues that "one cannot conclude that a jury could reasonably believe that evidence of hand gestures in response to a question about a murder, could be interpreted as a confession to eleven murders." Def. Borgesi's Second Supp. Mot. 5-6. "'Evidence is [sufficiently] reliable for the purposes of Rule 404(b) unless it is so preposterous that it could not be believed by a rational and properly instructed juror.'" <u>Bergrin II</u>, 682 F.3d at 279 (quoting <u>United States v. Siegel</u>, 536 F.3d 306, 319 (4th Cir. 2008)). Contrary to Defendant Borgesi's assertion, Monacello's testimony is sufficient evidence for a jury to be able to "reasonably conclude that the act[s] occurred and that the defendant was the actor." <u>Huddleston</u>, 485 U.S. at 689. It is up to the factfinder whether to believe this pantomimic form of communication.

_____

[19] The Court notes that regardless of the alleged occurrence of these acts, this evidence would be probative of Monacello's state of mind and understanding of Defendant Borgesi's violent reputation. <u>Scarfo</u>, 850 F.2d at 1020.

Moreover, the Government has fulfilled its burden of providing a chain of logical inferences that is probative of material issues other than Defendant Borgesi's character or a trait of character, namely, Defendant Borgesi's knowledge of the criminal purposes of the enterprise and intent to join in the conspiracy, and the credibility of cooperating witness Monacello. These are proper non-propensity purposes under Rule 404(b) and the proffered evidence is relevant to proving these purposes. See DiSalvo, 34 F.3d at 1221; Traitz, 871 F.2d at 389; Scarfo, 850 F.2d at 1020. Finally, the probative value of this evidence, for example, to Monacello's state of mind and to his credibility as well as to Defendant Borgesi's knowledge of the criminal purposes of the enterprise, outweighs the risk of unfair prejudice. Thus, the Court finds this evidence admissible under Rules 404(b) and 403.

## ii.  Objection No. 2

The second uncharged crime that the Government seeks to introduce involves an alleged crime that occurred in the mid-1990's. Specifically, the Government asserts that Monacello will testify that Defendant Borgesi gave him a revolver, a machine gun, and ammunition to hold for Defendant Borgesi. Exhibit 1 p. 16. The Government contends that this evidence is relevant to confirm that Defendant Borgesi was a knowing participant in an

enterprise that used violence and threats of violence to achieve its illegal objectives; corroborates Monacello's testimony that he knew of and exploited Defendant Borgesi's reputation for violence in carrying out his duties; and confirms Monacello's concern for his safety is well-founded. Gov't's Resp. 3-4.

Here, the probative value of the evidence presented is minimal compared to the risk of unfair prejudice posed by this evidence. Evidence of Defendant Borgesi giving Monacello weapons and ammunition when there is no other reference to the use of these weapons, carries the danger that the jury might base its decision on an improper purpose, such as on the Defendant's character. Thus, the Court finds that this evidence is inadmissible under Rule 403.

### iii. Objection No. 3

The third uncharged crime involves an alleged assault on an associate of the Philadelphia LCN Family. Specifically, the Government states that "Borgesi told Monacello that he assaulted Angelo Lutz, an associate of the Philadelphia LCN Family, because he had used checks belonging to Borgesi without his permission. Monacello prevented Borgesi from killing Lutz." Exhibit 1 p. 16. Defendant Borgesi argues that the personal nature of this dispute makes it clear that the Government would like to introduce this evidence of the Defendant's propensity

for violence. Def. Borgesi's Second Supp. Mot. 7. The Government responds that whether Defendant Borgesi's assault was a personal matter is an issue for the jury to decide based upon the surrounding circumstances. Id.

The Government argues that rather than propensity, this evidence tends to show Defendant Borgesi's desire to impress upon his crew member Monacello that he was owed the proper respect and deference due a leader of the enterprise, and was prepared to use violence and the threats of violence to ensure it. Gov't's Resp. 4. Again, the Government contends that this evidence is probative of the existence and continuity of the enterprise, Defendant Borgesi's knowledge of the criminal purpose of the enterprise and intention to join the conspiracy, and Monacello's credibility. Exhibit 1 p. 18.

As above, the Court finds that the Government has met its burden in demonstrating that the evidence is being offered for and relevant to appropriate non-propensity purposes. Moreover, the risk of unfair prejudice does not substantially outweigh the probative value of this evidence, as this alleged assault and Monacello's intervention are probative of essential elements of the racketeering conspiracy and occurred during the course of the conspiracy. Thus, evidence of the alleged assault on an LCN associate is admissible under Rules 404(b) and 403.

        The fourth uncharged crime to which Defendant Borgesi

objects is Monacello's testimony that in 2001, during the

charged racketeering conspiracy, Monacello and others assaulted

an individual who was not paying a sports bet. Exhibit 1 p. 16.

Defendant Borgesi argues that the Government has not provided

the specifics of this incident, and thus the Court does not have

sufficient information to address this particular allegation.

Def. Borgesi's Second Supp. Mot. 8. The Government argues that

this evidence is direct proof of the racketeering conspiracy

charged in the indictment, and therefore is not subject to Rule

404(b). Count One avers that members of the Philadelphia LCN

Family used violence and threats of violence to achieve the

illegal objectives of the enterprise, including the collection

of unlawful debts. Furthermore, the Government contends that

this evidence is also relevant proof of Defendant Borgesi's role

in the conspiracy. Specifically, Monacello will testify that he

personally committed acts of violence pursuant to instructions

from Defendant Borgesi, "thereby confirming Defendant Borgesi's

association with and participating in the enterprise, and

Defendant Borgesi's status as an effective crew leader." Gov't's

Resp. 5. Lastly, the Government contends that this evidence is

also relevant to the issue of Monacello's credibility. Id.

The Court finds that this evidence is intrinsic to the racketeering conspiracy charged in the indictment and thus is probative of elements of the racketeering conspiracy, such as Defendant Borgesi's role in the conspiracy and his knowledge of and intent to participate in the conspiracy. In addition, the evidence may properly be submitted under Rule 404(b) because it is probative of at least the non-propensity purpose of evaluating Monacello's motives for cooperating with the Government. Defendant Borgesi does not discuss the unfair prejudice that would result from the introduction of this evidence. However, the Court finds that as a result of hearing this evidence, it is unlikely the jury will base its decision "'on something other than [the evidence's] persuasive weight.'" Bergrin II, 682 F.3d at 279 (quoting Cruz-Garcia, 344 F.3d at 956). Accordingly, the Court finds that the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice.

v.    Objection No. 5

The fifth alleged uncharged crime references an attempt to intimidate witnesses during Defendant Borgesi's previous trial. In particular, Defendant Borgesi objects to Monacello's testimony that in 2000, during the charged racketeering conspiracy, he and others attempted to intimidate

several bookmakers who were scheduled to testify in Defendant Borgesi's racketeering trial. Exhibit 1 pp. 16-17. Defendant Borgesi contends that there is no probative value to the uncharged crime alleged, and it is unduly prejudicial "as it implicates Mr. Borgesi in a plan to obstruct justice and intimidate witnesses, over twelve years ago." Def. Borgesi's Second Supp. Mot. 9. The Government argues again that this evidence is direct proof of the racketeering conspiracy charged in Count One, and therefore is not subject to Rule 404(b). Gov't's Resp. 5. Count One avers that members of the Philadelphia LCN Family engaged in various activities to conceal their criminal activities, including attempting to obstruct justice. See Third Superseding Indictment ¶ 32. The Government maintains that this evidence is direct proof of these averments. Furthermore, the Government argues that the evidence is also relevant to show Defendant Borgesi's association with and participation in the enterprise, his position of leadership and power in the enterprise, and relevant to Monacello's credibility. Gov't's Resp. 5.

The Court finds that this evidence is intrinsic proof of the charged racketeering activity, particularly since one of the purposes of the alleged enterprise was "to conceal the existence and operations of the Enterprise from law enforcement detection through acts designed to obstruct justice." See Third

Superseding Indictment ¶¶ 6, 32. In the alternative, the Government has fulfilled its burden under Rule 404(b) of providing a chain of logical inferences that is probative of a material issue other than Defendant's character or a trait of character, namely, for example, Defendant Borgesi's association with and leadership role within the enterprise. While there is some risk of unfair prejudice stemming from the nature of the uncharged act at issue, the risk does not outweigh the probative value.

### vi.   Objection No. 6

Monacello will testify that in 1998-1999, he and others assaulted an individual who Defendant Borgesi believed had been disrespectful to a friend of an associate of the Philadelphia LCN Family. Exhibit 1 p. 17. Defendant Borgesi objects to this evidence on the ground that "there is no indication that this assault had anything to do with LCN business . . . ." Def. Borgesi's Second Supp. Mot. 10. The Government contends that the evidence is relevant to the methods of operation of the enterprise, namely to instill "fear in the community." Gov't's Resp. 6. Moreover, the Government contends that the evidence is also relevant to Defendant Borgesi's role within the enterprise's larger organization, history and operations. Id.

The Court finds that the relevance of the uncharged crimes evidence to the Government's case against Defendant is substantial because it is probative of Defendant Borgesi's association with, participation in, and status within the enterprise. The evidence is also admissible under Rule 404(b) as it furnishes essential background information and demonstrates a continuing relationship between Monacello, a cooperating government witness and indicted co-conspirator, and Defendant Borgesi. Thus, the Court finds that the potential prejudicial effect of this evidence does not substantially outweigh the probative value of this evidence. Thus, the Court denies Defendant Borgesi's objection.

### vii. Objection No. 7

Lastly, Monacello will testify that in 1998, Defendant Borgesi directed Monacello, Defendant Staino, Jr., and others to assault members of a rival gang to send a message on behalf of the Philadelphia LCN Family. Exhibit 1 p. 17. Once again, Defendant Borgesi objects to this evidence because it occurred outside the conspiracy and is not probative of any of the crimes charged in the indictment. Def. Borgesi's Second Supp. Mot. 10. The Government responds that this evidence is competent proof of the existence and nature of the enterprise, Defendant Borgesi's knowing association with and participation in the enterprise,

Defendant Borgesi's power and influence over his crew members, as well as Monacello's motives for cooperating with the Government. Gov't's Resp. 6.

For the same reasons the Court denied Defendant Borgesi's objections to the fourth and sixth alleged uncharged crimes, the Court finds that evidence of the alleged assault on members of a rival gang is admissible.

### b.    Conclusion

As to the seven specific objections to the admissibility of Rule 404(b) evidence raised by Defendant Borgesi in his Second Supplemental Motion to Exclude Other Crimes Evidence, the Court will deny his 1st, 3rd, 4th, 5th, 6th, and 7th objections. The Court will grant Defendant Borgesi's 2nd objection. To the extent that the Court found the evidence to be presented by Monacello admissible under Rule 404(b), the Court will provide, where requested, appropriate limiting instructions.

## V.    DISPOSITION OF THE MOTIONS

For the foregoing reasons, the Court grants the Government's Motion in Limine (ECF Nos. 648, 649) and denies Defendant Ligambi's Motion to Strike from the Indictment and Bar All Reference to the History and Structure of La Cosa Nostra at Trial (ECF No. 561), as well as Defendant Staino, Jr.'s, Motion

to Strike Surplusage from Indictment and Bar All References to the History and Structure of La Cosa Nostra at Trial (ECF No. 742) and Defendant Borgesi's Motion in Limine to Exclude Other Crimes Pursuant to Federal Rule of Evidence 404(b). ECF Nos. 643, 716. The Court also denies Defendant Ligambi's Motion to Exclude Evidence of Defendant Ligambi's Prior Bad Acts and Crimes. ECF No. 713. Lastly, the Court denies in part and grants in part Defendant Borgesi's Second Supplemental Motion in Limine to Exclude Other Crimes Evidence Pursuant to Federal Rules of Evidence 404(b) and 403. ECF No. 828. An appropriate order will follow.